[No. F010193. Fifth Dist. May 2, 1989.]

JONATHAN MITCHELL MORALES et al., Plaintiffs and Appellants, v.
D. PAUL FANSLER et al., Defendants and Respondents.

## COUNSEL

Kahn, Soares & Conway, Dale A. Stern, G. Scott Benker and Leonard Herr for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, Wade M. Hansard and David H. Bent for Defendants and Respondents.

## OPINION

**PETTITT, J.\***—

### STATEMENT OF THE CASE AND PROCEEDINGS BELOW

In a lease dated March 5, 1985, D. Paul Fansler and Marlene M. Fansler (respondents) leased premises located in Clovis to Ramiro Morales and Rosa Morales (tenants) for a three-year term. The premises were to be used as a restaurant.

The lease required the tenants to obtain personal injury liability insurance in the minimum amount of $500,000 per injured person and $1 million per occurrence. The personal injury liability insurance actually obtained by the tenants was for only $300,000 coverage per person. The respondents were not aware that the tenants had obtained only $300,000 coverage, rather than the required $500,000 coverage.

On February 2, 1986, four-year-old Jonathan Mitchell Morales (appellant), who was having lunch at the tenants' restaurant with his parents and siblings (appellants), wandered into the kitchen and fell or was knocked into a large pot of soup which had been set on the floor of the kitchen. Appellant was seriously burned.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

Appellants received $300,000 in settlement from the tenants' insurance carrier.

Appellants filed suit against respondents and other defendants. The complaint alleged, among other things, that respondents were negligent in failing to make sure that the tenants obtained the required $500,000 insurance policy. Respondents filed a motion for summary judgment which was granted by the trial court and judgment was entered on January 28, 1988. Appellants appeal and raise the legal duty issue only.

## DISCUSSION

■ In a case where the only material issue presented is a question of law, it is appropriate for the court to resolve the legal issue and grant summary judgment. (*Neinstein* v. *Los Angeles Dodgers, Inc.* (1986) 185 Cal.App.3d 176, 179 [229 Cal.Rptr. 612]; *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].)

■ The granting of a motion for summary judgment is left to the sound discretion of the trial court. Upon appeal, such determination will be set aside only upon a clear showing of abuse of discretion on the part of the trial court. (*Neinstein* v. *Los Angeles Dodgers, Inc., supra,* 185 Cal.App.3d 176, 179; *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc., supra,* 128 Cal.App.3d 583, 589.) In order to determine that a trial court abused its discretion, it must be shown that the trial court's action was "arbitrary or capricious" or that the court acted "without any basis in reason." (*Blackman* v. *Burrows* (1987) 193 Cal.App.3d 889, 893 [238 Cal.Rptr. 642].)

I.

*Respondents Had No Legal Duty to Appellants to Ensure That Respondents' Tenants Maintain the Level of Personal Injury Liability Insurance Coverage Specified in the Lease.*

■ Appellants apparently assume the law imposes no general duty on respondents to ensure insurance coverage by tenants for the benefit of persons who might be injured due to tenant negligence. Appellants' entire reliance is on the "voluntary assumption" of duty rule which they contend is applicable to respondents by virtue of the lease requirement of insurance coverage in the amount of $500,000 per person injured.

We concur in the apparent concession by appellants that respondents had no general or common law legal duty to ensure insurance coverage in any amount for the benefit of third parties who might suffer an injury due to

tenant negligence over which respondents had no possible control. There is no authority for a contrary position.

Nevertheless, appellants contend that respondents assumed a legal duty to appellants to enforce the term of the lease agreement which required the $500,000 per person per incident limit. Since respondents failed to enforce the insurance limit they voluntarily imposed, appellants contend they were negligent and that the appellants were damaged as a result of respondents' alleged negligence.

In the instant case, the trial court determined that the only material issue presented was whether the above described voluntarily assumed legal duty existed. ■ Since the determination of whether a legal duty exists in a particular case is a question of law (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737]; *Jones* v. *Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717]), the trial court considered the legal issue presented in the context of a motion for summary judgment. Appellants are in error when they contend the issue of legal duty is a question of fact.

The determination of the existence of a legal duty "depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances." (*Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 342.)

To determine whether public policy warrants the imposition of a legal duty on a particular person in favor of another under a given set of circumstances, the court must balance factors or considerations like those set forth in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. These factors include "[1] the foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection between the defendant's conduct and the injury suffered, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at p. 113.)

Prior to balancing those factors, we point out the actual harm which appellants contend was suffered as a result of respondents' alleged negligence was the possible loss of an opportunity to collect an additional $200,000 from the insurance company.

■ The first factor is foreseeability. While it is foreseeable that an injured business invitee of a tenant would be precluded from collecting damages from the tenant's insurance carrier up to the amount specified in a

lease if the tenant obtained insurance coverage for a lesser amount, there are strong policy considerations which would militate against the imposition of a duty on a landlord to enforce an insurance clause in a lease agreement for the benefit of the tenant's business invitees.

The purpose of a lease agreement provision which requires that a tenant obtain a certain level of liability insurance coverage is to protect the landlord from the landlord's possible liability associated with owning the premises. While business invitees may necessarily benefit from such a provision, that fact does not affect the reason for the lease provision. The provision is not imposed in order to protect business invitees of the tenant.

As to the factor of degree of certainty that the appellants in the instant case suffered injury, there is no indication, other than the claim of the appellants, that the appellants sustained damages in excess of the amount of $300,000 already obtained from the tenants' insurance carrier.

Additionally, the connection factor between the respondents' conduct and the appellants' damage is very tenuous. Respondents initially required their tenants to obtain personal injury liability insurance in the amount of $500,000 per person per incident. The condition causing the harm did not arise until the tenants failed to obtain the full $500,000 coverage. Respondents then failed to enforce the insurance term of the lease agreement. This failure is indeed remote from appellants' damage.

As to the fourth consideration of moral blame attached to the respondents' conduct, it is clear from the above discussion that respondents' initial action of requiring their tenants to obtain liability insurance imparts to the respondents no moral blame for the possible harm suffered by the appellants. In fact, if respondents had not included an insurance clause in the lease, their tenants may not have obtained any liability insurance at all. In that event, appellants may not have received any compensation at all for their injuries. In this regard, we know of no authority which would attach blame to respondents if they had required no insurance. Furthermore, since respondents were not even aware that their tenants had not complied with the subject lease term, no moral blame can be attached to a failure on the part of the respondents to enforce the term. Indeed, our conclusion would be the same even if respondents had been aware of the tenant's failure to comply.

*Rowland's* fifth criterion addresses the policy of preventing future harm. If a duty were to be placed on all landlords to enforce insurance clauses in lease agreements with their tenants, the response of many landlords, as pointed out by the court below during the hearing on the motion for summary judgment, would be to exclude such a clause from lease agreements. The direct consequence of such action would be that at least some tenants

would choose not to obtain insurance coverage, and injured invitees of such tenants would not be able to collect on a judgment obtained against many of those tenants. Imposition of such a duty on landlords would *create* future harm rather than *prevent* future harm.

The sixth criterion addresses the extent of the burden to the defendant and the consequences to the community resulting from the imposition of the proposed voluntarily assumed duty. As the court below pointed out during the hearing, once a landlord is required to ensure that its tenant comply with insurance clauses in a lease agreement, the next step is to impose a burden on landlords to require that their tenants obtain an *adequate* amount of liability insurance. The question of what an "adequate amount of insurance" might be would be a subject of litigation and would impose a burden on the judicial system to deal with the many cases in which this issue would be litigated. How the courts could be expected to undertake such legislative determinations escapes us.

Furthermore, the effect of creating a duty to enforce an insurance provision is, in essence, imposing a strict liability on all landlords for all damages recovered by their tenant's invitees up to the amount specified in any insurance clause contained in a lease agreement. As stated above, the response of many landlords would be to exclude insurance clauses from their lease agreements, insure themselves against any potential liability arising from the operation of the leased premises, and cover the cost of such insurance by raising the rent. Otherwise, landlords would be voluntarily saddling themselves with the same type of vicarious liability as principals for the acts of their agents and employees.

It would also be unfair to provide a business invitee of a tenant-proprietor with a right against a landlord where the business invitee of an owner-proprietor would have no comparable right.

As to the matter of availability, cost and prevalence of insurance for the risk involved in the situation presented by this case, we can only hazard the opinion that the cost might be high as it is with all insurance. The carriers would be asked to insure a landlord against a risk over which the landlord may have little or no control.

As alluded to above, it is questionable, in any given situation, whether a landlord has the requisite control over a tenant to enforce some provisions of a lease agreement. One party to an agreement cannot force another party to perform. A party to an agreement is not required in an absolute sense to comply with the agreement. He or she may choose not to comply or simply neglect to do so.

Also, while a landlord may be under a duty to abate a dangerous condition created by a tenant through, for example, termination of a lease, a

landlord has no duty to do so unless he or she has a degree of control over the tenant so as to be able to remove the offending condition. (*Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 512 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) ■ As we have stated, respondents were not aware that the tenant had not obtained the required amount of insurance. However, by pointing out that fact, we are not inferring such knowledge would have made any difference, for we find no assumed duty or voluntary undertaking by respondents. The voluntary undertaking cases with resulting liability for negligently executing the undertaking are not applicable here. We have in mind the cases cited by appellants wherein a voluntary undertaking was present. They cite *Janofsky* v. *Garland* (1941) 42 Cal.App.2d 655, 657 [109 P.2d 750], as a typical example of a voluntary undertaking followed by negligence. In *Janofsky,* a landlord voluntarily undertook to make repairs to a bedroom ceiling. He did so negligently, the ceiling fell and his tenants were injured.

The contrasts between *Janofsky* and the instant case are quite obvious. There, the landlord volunteered to do repair work to make the premises more safe and tenable. This was done for the safety of his tenant. As a direct result of his negligence, the ceiling collapsed thereby causing injuries to his tenant. In the instant case, respondents inserted a provision in their lease designed to protect themselves. They did not volunteer to do anything for the tenants, let alone for appellant customers of the tenant. Failing to know of the tenants' failure to comply with the lease provision certainly has no nexus with appellants' injuries. It has little or no more nexus with appellants' claim of damage because, not only is the connection tenuous, but it lacks the requirement of a duty owed by respondents to appellants under the circumstances present.

The cases cited by respondents involving insurance coverage matters are more to the point. Those cases find liability where a promise to provide certain coverage can be found. (*Dana* v. *Sutton Motor Sales* (1961) 56 Cal.2d 284 [14 Cal.Rptr. 649, 363 P.2d 881]; *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924]; *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 817 [278 P.2d 91].) In *Valdez,* a used car salesman agreed to provide a buyer with " 'full coverage insurance to cover the other man.' " (129 Cal.App.2d at p. 812.) The salesman failed to do so, and after an auto accident, a judgment was recovered against the buyer. He sued the automobile dealer for failure to procure the coverage promised. On appeal, the court stated, "[i]t is well established that a person may become liable in tort for negligently failing to perform a voluntarily assumed undertaking even in the absence of a contract so to do." (*Id.* at p. 817.)

On the other hand, a failure to undertake a responsibility not required by contract, or otherwise, has the opposite result. In *Shultz Steel Co.* v. *Hart-*

*ford Accident & Indemnity Co.* (1986) 187 Cal.App.3d 513 [231 Cal.Rptr. 715], the trial court granted summary judgment to an insurer where the plaintiff alleged the insurer's broker had negligently failed to suggest higher policy limits. This was affirmed on appeal. In light of *Shultz,* we find it difficult to conclude a landlord somehow owes a business invitee of his tenant a duty to ensure that the tenant purchases a $500,000 policy instead of one for $300,000. *Jones* v. *Grewe, supra,* 189 Cal.App.3d 950, 956, is another insurance coverage case which reaches the same type of result as does *Shultz.*

For the above reasons, it seems evident that even though the harm to the appellants was perhaps foreseeable, there are a vast number of policy considerations and legal impediments to imposing a duty on the respondents to enforce the insurance clause in the subject lease agreement. Additionally, the record indicates that the court below based its determination that a legal duty should not be imposed on at least two of the policy considerations discussed above; that is, the fifth and sixth of those discussed in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 113. Therefore, the trial court did not abuse its discretion in granting the motion for summary judgment in favor of respondents.

### DISPOSITION

Judgment affirmed. Respondents to have their costs on appeal.

Best, Acting P. J., and Baxter, J., concurred.