# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 4, 2000 Session

## LARRY W. STEWART  v.  STATE OF TENNESSEE

**Appeal by Permission from the Court of Appeals, Middle Section**
**Tennessee Claims Commission, Middle Division**
**No. 10917201     Hon. W.R. Baker, Commissioner**

---

**No. M1998-00304-SC-R11-CV - Filed December 20, 2000**

---

In this case, we determine whether the Tennessee Claims Commission properly asserted jurisdiction pursuant to Tennessee Code Annotated sections 9-8-307(a)(1)(E) and -307(a)(1)(F) for the alleged negligence of a state highway patrol officer in failing to properly control county police authorities at an arrest scene.  The Court of Appeals affirmed the Commission's exercise of jurisdiction, and the State requested permission to appeal on the issue of whether the Claims Commission properly asserted jurisdiction and whether the plaintiff, who stepped into the road before being hit by the truck, was fifty percent (50%) or more at fault for his accident.  We hold that the Claims Commission lacked jurisdiction in this case under either section 9-8-307(a)(1)(E) or section 9-8-307(a)(1)(F), and because the Claims Commission possessed no jurisdiction to hear the plaintiff's claims, we decline to reach the issue of whether the plaintiff was more than fifty percent (50%) at fault for his accident.  Accordingly, the judgment of the Court of Appeals finding proper jurisdiction is reversed, and the plaintiff's claim against the State is dismissed.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Reversed; Claim Dismissed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Laura T. Kidwell, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee.

Randy Hillhouse, Lawrenceburg, Tennessee, for the appellee, Larry W. Stewart.

## OPINION

Shortly before midnight on September 20, 1991, Tennessee Highway Patrol Officer Billy Ray was on duty in Hohenwald, Tennessee, when he received a radio dispatch from the Lewis County Sheriff's Department notifying him that a blue 1974 Chevy Nova was speeding on Highway 99. Trooper Ray set up a radar station, and within minutes, he saw the car speed by at about 80 miles per hour. Ray activated his emergency lights and siren, and he stopped the car on an incline heading west away from Hohenwald. Trooper Ray parked his patrol car behind the Nova.

After arresting the driver of the Nova for speeding and driving on a revoked license, Ray placed him in the back seat of his cruiser. In the meantime, two deputies and three reserve deputies from the Lewis County Sheriff's Department arrived in two patrol cars and parked behind Ray's vehicle on the right shoulder of the highway. Although Trooper Ray had not summoned the other county deputies or otherwise requested their assistance, the deputies stated that they were responding to the same dispatch that was received by Ray.

After the driver of the Nova was arrested, he requested that Ray release the Nova into the custody of the passenger in the car. Trooper Ray complied with the driver's request after confirming that the passenger had a valid driver's license and was otherwise competent to drive. As Ray was in the process of releasing the Nova into the custody of the passenger, the Nova slipped out of gear and began to roll backwards down the incline toward Ray's cruiser. A Lewis County deputy leaped into the car and applied the brake, thereby preventing a collision with Ray's patrol car.

The passenger then asked the Lewis County deputy, who was still in the car, to steer the Nova to the opposite shoulder of the highway so that she could drive the car to its owner in Hohenwald. In the process of turning the Nova around, the Nova stalled in the middle of the highway and would not restart. Three of the county deputies, including the plaintiff, reserve deputy Larry Stewart, then pushed the stalled car to the other shoulder. After the deputies tried unsuccessfully to restart the car, Trooper Ray permitted the former driver of the car to attempt to start the car, but he was also unsuccessful.

Because the car was now parked on a downward slope, the county deputies, who were unsure as to whether the car would slip out of gear again, decided to roll the car to the bottom of the hill where it could rest safely. Apparently, one of the deputies was steering the car, one deputy was pushing the car from behind, and the plaintiff was pushing the car somewhere near the driver's side door. As the car was being pushed to the bottom of the hill, the passenger asked one of the county deputies to take her into Hohenwald to notify the owner of the car of its condition. Trooper Ray then prepared to pull his patrol car in behind the Nova to provide any needed assistance once the owner arrived.

Shortly after the Nova reached the bottom of the incline, the plaintiff started to walk back across the road when he was struck by a pick-up truck traveling into town. The impact knocked the plaintiff almost ninety feet away into a guard rail. Although the plaintiff miraculously survived the impact, he suffered substantial injuries to his head resulting in permanent and irreversible brain damage. The plaintiff also suffered, among other things, a severe fracture to his spine and significant

injuries to his kidneys. After the plaintiff was struck, Trooper Ray notified the dispatcher to send an ambulance, and he pulled his patrol car behind the Nova on the other side of the road. In the meantime, county deputies notified the city police department and diverted traffic away from the accident site. Less than six minutes had elapsed from the time of Trooper Ray's release of the Nova to the plaintiff's accident.

On July 21, 1993, the plaintiff filed his formal claim with the Tennessee Claims Commission alleging that his injuries were proximately caused by Trooper Ray's negligence in not calling a tow-truck for the disabled car and in failing to properly control traffic around the arrest scene.[1] Eight months later in March of 1994, the State filed a motion to dismiss the claim for failure to allege any grounds of liability within the permissible categories of claims listed in Tennessee Code Annotated section 9-8-307(a)(1). In response, the plaintiff moved to amend his claim to allege that the officer's alleged negligence fell within three specific categories of liability: (1) negligent care, custody, or control of personal property under section -307(a)(1)(F) based on Ray's "negligent release of custody of the vehicle" and negligence "in refusing to call a wrecker to remove the car"; (2) negligent operation or maintenance of any motor vehicle under section -307(a)(1)(A) "since the operation of the vehicle by the deputies was under the direction and supervision of the Tennessee Highway Patrol"; and (3) actions resulting in a dangerous condition on state-maintained highways under section -307(a)(1)(J) based on Ray's "failure to adequately control and maintain an arrest scene." The Commission granted the plaintiff's motion to amend and denied the State's motion to dismiss, finding that a sufficient jurisdictional basis had been alleged.

Over four years later, the plaintiff's claim was heard before the Commission. After hearing testimony from several witnesses, the commissioner concluded that the issue of whether Trooper Ray was in control of the arrest scene had to be determined by the "actual facts of what went on out there." He then concluded that no one was in charge "[b]ecause these people all knew each other, and they all deferred to each other." The commissioner also concluded that Trooper Ray was not negligent in failing to call a tow truck because a general order from the Department of Safety directed Ray to follow the wishes of the driver in disposing of the vehicle. Finally, the commissioner concluded that the car was not in the custody of Trooper Ray at the time of the plaintiff's accident

---

[1] The plaintiff originally filed his claim on June 23, 1992, against the State of Tennessee in the Division of Claims Administration. In this original claim, the plaintiff alleged two separate grounds for relief against the State: (1) that "Trooper Ray was negligent in failing to call a wrecker to tow in the disabled vehicle"; and (2) that Ray was negligent in "failing to warn on-coming traffic of highway obstructions." The Division of Claims took no action on the claim, and the claim was forwarded to the Tennessee Claims Commission on September 21, 1992.

In the complaint filed before the Tennessee Claims Commission, the plaintiff alleged that the State "was guilty of the following specific acts of negligence": (1) "that the State of Tennessee did not properly control the arrest scene"; (2) "that the State of Tennessee should not have instructed the claimant to attempt to move the vehicle in the fashion he was directed to"; (3) "that the State Highway Patrol Officer at the scene did not have proper equipment or manpower available to adequately control and maintain the arrest scene"; and (4) "that the State Highway Patrol Officer was negligent in not calling an authorized wrecker to remove the automobile in question from the roadway."

The plaintiff also filed a claim for damages against Lewis County and the Lewis County Sheriff's Department in the Lewis County Circuit Court. This claim against these two defendants was later settled, and the only issue before the Claims Commission was that of the State's alleged negligence.

because Ray had previously released custody and control of the car pursuant to the driver's wishes.

Despite concluding that Trooper Ray had no actual control over the scene and that Ray did not have actual custody of the car at the time of the plaintiff's accident, the commissioner assessed ten percent (10%) fault against the State of Tennessee for the "negligence of Mr. Ray because he could have and ought to have stepped in and taken charge of this situation more strongly than he did." The commissioner also stated that "[t]he only thing more that Mr. Ray could have done that he ought to have done that he failed to have done . . . is to say to a bunch of volunteer deputies in the middle of the night, you all shut up and go sit down . . . ." Although he found liability on the part of the State, the commissioner did not specify the provision(s) of section 9-8-307(a)(1) under which he was imposing liability. Finally, the commissioner found the plaintiff's damages to be $300,000, and he assessed the remaining fault as follows: seventy percent (70%) to the driver of the pickup truck which struck the plaintiff; twelve percent (12%) to the plaintiff; and eight percent (8%) to the other Lewis County deputies.

On appeal to the Court of Appeals, the State argued that any negligence of a state trooper in failing to supervise county deputies did not fall within any provision of section 9-8-307(a)(1), and that as such, the Claims Commission was without jurisdiction to assess fault against the State. The intermediate court disagreed, holding that the findings of the commissioner fell within the category of "negligent care, custody, and control of persons" under section -307(a)(1)(E) and within the category of "negligent care, custody or control of personal property" under section -307(a)(1)(F). The Court of Appeals also found that the evidence in this case supported the commissioner's findings that Trooper Ray was negligent, that such negligence was the proximate cause of the plaintiff's injuries, and that the evidence did not preponderate against the commissioner's apportionment of fault to the plaintiff.

The State then requested permission to appeal to this Court, which was granted on the following three issues: (1) whether the State can be held liable under Tennessee Code Annotated section 9-8-307(a)(1)(E) for the failure of a state trooper to adequately supervise sheriff's deputies at the scene of the arrest; (2) whether the State can be held liable under Tennessee Code Annotated section 9-8-307(a)(1)(F) for personal injuries suffered by a deputy sheriff arising out of a state trooper's negligent control of personal property (a disabled car); and (3) whether the evidence preponderates against the assessment of twelve percent (12%) fault to the plaintiff. For the reasons given herein, we hold that the Tennessee Claims Commission improperly exercised jurisdiction under either section 9-8-307(a)(1)(E) or section 9-8-307(a)(1)(F) to award a monetary claim against the State of Tennessee. Because we hold that the Claims Commission was without jurisdiction in this case, we decline to reach the question of whether the evidence preponderates against the commissioner's finding that the plaintiff was twelve percent (12%) at fault for his own injuries. Accordingly, we reverse the judgment of the Court of Appeals and dismiss the plaintiff's claim against the State of Tennessee.

## JURISDICTION OF THE CLAIMS COMMISSION

It is a well-settled principle of constitutional and statutory law in this state that "[t]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued." Brewington v. Brewington, 215 Tenn. 475, 480, 387 S.W.2d 777, 779 (1965). This doctrine of sovereign immunity "has been a part of the common law of Tennessee for more than a century and [it] provides that suit may not be brought against a governmental entity unless that governmental entity has consented to be sued." Hawks v. City of Westmoreland, 960 S.W.2d 10, 14 (Tenn. 1997). Despite this general grant of immunity, however, the courts of this state have frequently recognized that the Tennessee Constitution has modified this rule of absolute sovereign immunity by providing that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17; see also Kirby v. Macon County, 892 S.W.2d 403, 406 (Tenn. 1995).

Pursuant to its constitutional power to provide for suits against the state, the legislature created the Tennessee Claims Commission in 1984 to hear and adjudicate certain monetary claims against the State of Tennessee. See Tenn. Code Ann. §§ 9-8-301 to -307 (1999). While the Claims Commission has exclusive jurisdiction to hear claims arising against the state, cf. Tenn. Code Ann. § 20-13-102(a) (1994),[2] this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a). If a claim falls outside of the categories specified in section 9-8-307(a), then the state retains its immunity from suit, and a claimant may not seek relief from the state. Cf. Hill v. Beeler, 199 Tenn. 325, 329, 286 S.W.2d 868, 869 (1956) (stating that "except as the Legislature of the State consents there is no jurisdiction in this Board of Claims to entertain suits against the State").

The courts of this state have traditionally held that any statute granting jurisdiction to hear a claim against the state must be strictly construed, as any such statute is in derogation of the common law rule of sovereign immunity. See, e.g., Norman v. Tennessee State Bd. of Claims, 533 S.W.2d 719, 722 (Tenn. 1975) ("We further recognize that the statutory provisions governing the Board of Claims have been strictly construed, in view of the fact that they do represent an encroachment upon the sovereign immunity and upon the assets of the State."); State ex rel. Allen v. Cook, 171 Tenn. 605, 609, 106 S.W.2d 858, 860 (1937) ("Statutes passed by the Legislature, under the authority of article 1, section 17, of the Constitution, permitting suits against the state, being in derogation of the sovereign's exemption from suits, must be strictly construed."). Nevertheless, in 1985, the General Assembly amended section 9-8-307(a) to express its intention as to the jurisdictional reach of the Claims Commission: "It is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn. Code Ann. § 9-8-307(a)(3).

---

[2] Tennessee Code Annotated section 20-13-102(a) provides that

[n]o court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

Hence, although we have traditionally given a strict construction to the scope of the Commission's jurisdiction, we also recognize that our primary goal in interpreting statutes is "to ascertain and give effect to the intention and purpose of the legislature." Gleaves v. Checker Cab Transit Corp., Inc., 15 S.W.3d 799, 802 (Tenn. 2000) (citing Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn.1993)).  If the legislature intends that its statutes waiving sovereign immunity are to "be liberally construed," then the courts should generally defer to this expressed intention in cases where the statutory language legitimately admits of various interpretations. A policy of liberal construction of statutes, however, only requires this Court to give "the most favorable view in support of the petitioner's claim," Brady v. Reed, 186 Tenn. 556, 563, 212 S.W.2d 378, 381 (1948), and such a policy "does not authorize the amendment, alteration or extension of its provisions beyond [the statute's] obvious meaning." Pollard v. Knox County, 886 S.W.2d 759, 760 (Tenn. 1994).  Moreover, "[w]here a right of action is dependent upon the provisions of a statute . . . we are not privileged to create such a right under the guise of a liberal interpretation of it." Hamby v. McDaniel, 559 S.W.2d 774, 777 (Tenn. 1977).

Accordingly, when deciding whether a claim is within the proper statutory scope of the Commission's jurisdiction to hear and decide claims against the State of Tennessee, we will give a liberal construction in favor of jurisdiction, but only so long as (1) the particular grant of jurisdiction is ambiguous and admits of several constructions, and (2) the "most favorable view in support of the petitioner's claim" is not clearly contrary to the statutory language used by the General Assembly. Cf. Northland Ins. Co. v. State, __ S.W.3d __, __ (Tenn. 2000) ("The statute's liberal construction mandate allows courts to more broadly and expansively interpret the concepts and provisions within its text.").  Furthermore, because issues of statutory construction are questions of law, see Wakefield v. Crawley, 6 S.W.3d 442, 445 (Tenn. 1999); Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 599 (Tenn. 1999), we review the issues involving the jurisdiction of the Claims Commission *de novo* without any presumption that the legal determinations of the commissioner were correct.  See Northland Ins. Co., __ S.W.3d at __; Ardis Mobile Home Park v. State, 910 S.W.2d 863, 865 (Tenn. Ct. App. 1995).

*Liability for Negligent Care, Custody, and Control of Persons*

The Court of Appeals held that the Claims Commission properly exercised jurisdiction in this case pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E), which authorizes claims against the state for the "[n]egligent care, custody and control of persons."  According to the intermediate court, the evidence supported the commissioner's finding that Trooper Ray was negligent in failing "to take sharper, firmer control" of the county deputies at the arrest scene, and that as such, the trooper's negligence clearly supported jurisdiction under section -307(a)(1)(E). Before this Court, the State argues that a claim of negligent supervision of county deputies by a state trooper cannot fall within this grant of jurisdiction because there is simply no duty on the part of a state trooper to assume control over local police authorities at the scene of an arrest.  We agree with the State.

-6-

No provision of section 9-8-307(a)(1) specifically defines under what circumstances the state may be held liable for injuries resulting from the "[n]egligent care, custody and control of persons." An examination of the cases dealing with this grant of jurisdiction, though, makes clear that liability may be imposed for injuries to persons confined in penal institutions, residences, or health facilities maintained by the state. See Learue by Learue v. State, 757 S.W.2d 3, 5 (Tenn. Ct. App. 1987). It is also well established that liability may be imposed for injuries to third persons caused by those persons for whom the state has responsibility. See Hembree v. State, 925 S.W.2d 513, 517 (Tenn. 1996); Cox v. State, 844 S.W.2d 173 (Tenn. Ct. App. 1992).

The question in this case, therefore, becomes whether Trooper Ray had a legal duty to exercise reasonable care in the care, custody, and control of county deputies at an arrest scene. The State first argues that unlike other subsections in section -307(a)(1), section -307(a)(1)(E) is worded in the conjunctive with the word "and"; therefore for jurisdiction to exist in this case, the State contends that Trooper Ray must have been negligent in his care of the deputies, in his custody of the deputies, *and* in his control over the deputies. Cf. Tenn. Code Ann. § 9-8-307(a)(1)(F) (listing the requirements in the disjunctive with the word "or"); -307(a)(1)(G) (listing the requirements in the disjunctive with the word "or"). The State then argues that because the plaintiff does not allege that Trooper Ray had responsibility for the care or custody of the local deputies, the Claims Commission could not have properly exercised jurisdiction.

The State is correct in asserting that statutory phrases separated by the word "and" are usually to be interpreted in the conjunctive. Cf. Tennessee Manufactured Hous. Ass'n v. Metropolitan Gov't of Nashville, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990) (stating that the word "'and' is a conjunctive article indicating that the portions of the sentence it connects should be construed together"). Nevertheless, this Court has also recognized that the word "and" can also be construed in the disjunctive where such a construction is necessary to further the intent of the legislature. City of Knoxville v. Gervin, 169 Tenn. 532, 541, 89 S.W.2d 348, 352 (1936) ("The word 'and' is frequently construed as meaning 'or.' These words are interchangeable in the construction of statutes when necessary to carry out the legislative intent."). Although we generally presume that the General Assembly purposefully chooses the words used in statutory language, Federal Express Corp. v. Tennessee State Bd. of Equalization, 717 S.W.2d 873, 874 (Tenn. 1986), it is difficult to conceive that the legislature intended to deny jurisdiction in cases where negligent control of a person by a state employee resulted in injury, even though the injured person was not actually within the care or custody of the state employee. Liberally construing this statute, therefore, we conclude that the Claims Commission could properly assert jurisdiction under section 9-8-307(a)(1)(E) if Trooper Ray had a legal duty to control local police authorities at an arrest scene—irrespective of whether he had actual care and custody over the deputies—and if he was negligent in the fulfillment of that duty.

From our review of the relevant legal authorities, however, it seems clear that Trooper Ray was under no general legal duty to control local law-enforcement officials at an arrest scene. To be sure, Trooper Ray did have a duty to exercise reasonable care with regard to his own actions at the arrest scene, but the Claims Commission and the Court of Appeals essentially held that Trooper Ray was negligent by not controlling the actions of others at the scene. We have been unable to find any

statute or regulation that imposes upon state highway patrol officers the duty or obligation to control local police authorities at an arrest scene, and we are unable to find any statute or regulation that compels county law-enforcement officials to submit to the control of state highway patrol officers at the scene of an arrest.

In addition, we have found no case from any court in this state suggesting that Trooper Ray was under a common-law duty to control or supervise county police authorities at the arrest scene, and we are reluctant to impose such duty in this case without some precedential authority to do so. As we have recognized before, the imposition of a legal duty "reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996). Plainly stated, Trooper Ray was in no better position than any of the other deputies, including the plaintiff, to prevent the plaintiff's harm. All of the Lewis County deputies were trained in law-enforcement practices, and the plaintiff himself, who had over a year's experience with the Sheriff's Department before his accident, admitted to receiving forty hours of such training. Moreover, Ray enjoyed no special relationship with the Lewis County deputies that would result in the law imposing a duty upon Ray to control the actions of the deputies. Given these circumstances, we decline to find that "society's contemporary policies and social requirements" mandate imposing upon Trooper Ray a common-law duty to control the conduct of local police authorities at an arrest scene.

To say that Trooper Ray was under no general legal duty to assert control over the county officers in this case, however, is not to say that Trooper Ray was incapable of assuming such a duty. Because any "determination of the state's liability in tort shall be based on traditional tort concepts of duty," Tenn. Code Ann. § 9-8-307(c), the Claims Commission may properly exercise jurisdiction in cases in which a state highway patrol officer has assumed a duty to control local law-enforcement officials and is negligent in the discharge of that assumed duty. Cf. Marr v. Montgomery Elevator Co., 922 S.W.2d 526, 529 (Tenn. Ct. App. 1995) ("One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.").[3] As is the case generally with questions of whether a duty has been imposed by law, the question of whether one has assumed a duty to act is also a question of law. See, e.g., Castro v. Brown's Chicken & Pasta, Inc., 732 N.E.2d 37, 42 (Ill. App. Ct. 2000) ("Whether a defendant has voluntarily undertaken a legal duty to a plaintiff seeking to bring a negligence action is a question of law . . . .").[4]

---

[3] The commissioner found the State liable for Trooper Ray's actions "because [Ray] could have and ought to have stepped in and taken charge of this situation more strongly than he did." In this manner, the commissioner conceded that while Trooper Ray was not under a specific duty to act, Ray was negligent in not assuming a duty to act. While we know of no rule of law that compels a person to assume a duty to act that is not otherwise imposed or implied by law, in liberally construing the jurisdiction of the Claims Commission, we nevertheless undertake to determine whether Ray voluntarily assumed a duty to control other deputies at the arrest scene.

[4] See also Coghlan v. Beta Theta Pi Fraternity, 987 P.2d 300, 312 (Idaho 1999) ("This Court has recognized that 'it is possible to create a duty where one previously did not exist. If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner.' Generally, the question

(continued...)

From our examination of the undisputed facts in the record, we find that as a matter of law, Trooper Ray did not assume any such duty to control the Lewis County police deputies. First, Trooper Ray did not summon the Lewis County deputies to the arrest scene or otherwise request any assistance from the Lewis County Sheriff's Department. In fact, by the time most of the deputies arrived, the driver of the Nova had already been arrested and placed in the back of Ray's police cruiser. In addition, it was undisputed that Trooper Ray did not order, instruct, or request that the deputies perform any specific duties, nor did he attempt to prevent the deputies from performing their own tasks during this time. Although the plaintiff argues that all of the witnesses agreed that Trooper Ray was "in control" of the arrest scene as Ray was the first officer on the scene,[5] the actions of the deputies do not confirm this belief. For example, the deputies neither sought Ray's instruction nor his permission to undertake various tasks, such as moving the Nova to the other side of the road, establishing roadblocks and directing traffic around the accident scene, or requesting further assistance after the accident from the Hohenwald Police Department.[6] Accordingly, because we conclude as a matter of law that Trooper Ray neither possessed nor assumed a legal duty to control local police authorities at the arrest scene, we hold that the Court of Appeals erred in finding that the Claims Commission had jurisdiction over the plaintiff's claim pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E).

*Liability for Negligent Care, Custody, or Control of Personal Property*

As an alternative basis for jurisdiction, the Court of Appeals also found that the Claims Commission possessed jurisdiction under section 9-8-307(a)(1)(F), which authorizes claims against the state for the "[n]egligent care, custody or control of personal property." Although its decision is unclear on this point, the intermediate court seems to have found that Trooper Ray was negligent

---

[4] (...continued)

whether a duty exists is a question of law."); Morales v. Fansler, 258 Cal. Rptr. 96, 98 (Cal. Ct. App. 1989) ("[T]he trial court determined that the only material issue presented was whether the above described [defendants] voluntarily assumed [a] legal duty . . . . Appellants are in error when they contend the issue of legal duty is a question of fact.").

We note that Indiana courts apparently hold that "[a]lthough the determination of whether a duty exists is generally a question of law, whether a party assumed a duty and the extent of that duty are questions for the fact-finder." Sizemore v. Templeton Oil Co., 724 N.E.2d 647, 651 (Ind. Ct. App. 2000). Even under this approach, though, the material facts giving rise to an assumed duty in this case are undisputed, and as such, the question of whether a duty to control county deputies was assumed by Trooper Ray in this case remains one of law. See id. ("We may decide whether [the defendant] assumed a duty toward the [plaintiffs] only if there are no genuine issues of material fact.").

[5] Even Trooper Ray admitted that because he was the first on the scene, he was the person who was in control of the arrest. Ray later stated, though, that whatever "control" he possessed disappeared as soon as the arrest was complete and the vehicle was released to a competent driver. Ray testified, and we agree, that after the vehicle was released, the county deputies then assumed control over the former arrest scene by moving the car to the opposite shoulder themselves.

[6] In his findings of fact and conclusions of law, the commissioner acknowledged that the officers in this case "all deferred to each other" and that "there wasn't any[one] in charge out there." The commissioner also made a specific finding of fact that Trooper Ray was "not in charge that night," concluding that "[t]he question is not that [Ray] was in charge. He was not in charge . . . ."

-9-

in failing to call a tow truck to remove the 1974 Nova and in allowing the disabled car to be moved to the other side of the road by the county deputies. Based on our review of the cases interpreting section -307(a)(1)(F), we observe that no court in Tennessee has held that this section permits a claim for personal injury *caused by* the negligent care, custody, or control of personal property. Rather, virtually every case that has interpreted section -307(a)(1)(F) has construed that statute to permit claims against the state only when the negligence of a state employee in the care, custody, or control of personal property has resulted in the damage or loss of that particular item of personal property itself.[7] This having been said, however, the precise issue of whether section -307(a)(1)(F) permits claims for damage to persons *caused by* the negligent care, custody, or control of personal property was not addressed by any of these opinions, and it remains an issue of first impression in this state.

The plaintiff urges this Court to apply a liberal construction to this subsection and allow claims of personal injury resulting from the negligent care, custody, or control of personal property. Because the language of section 9-8-307(a)(1)(F) is subject to various interpretations, and because the plaintiff's interpretation is not clearly contrary to the language of the statute, a liberal construction of this statute counsels against construing it strictly to apply only to claims for damage to the property itself. Accordingly, we agree with the plaintiff that section 9-8-307(a)(1)(F) does permit claims against the state for damages *caused by* the negligent care, custody or control of personal property by state employees.

In response, the State argues that such a construction would render inoperative two other specific grants of jurisdiction: section -307(a)(1)(A), which permits claims arising from the "negligent operation or maintenance of any motor vehicle," and section -307(a)(1)(M), which permits claims arising from the "[n]egligent operation of machinery or equipment." We disagree. In the typical case, the proof needed to satisfy the element of negligent *maintenance* or *operation* of automobiles or machinery is much different than the proof needed to establish care, custody, or control of those same items of personal property. Indeed, as can be seen in this case, the element of control simply does not equate to that of operation or maintenance, because while Trooper Ray had control of the Nova prior to his release of the car, he was not involved in its maintenance or

---

[7] Ahkeen v. Parker, No. W1998-00640-COA-R3CV, 2000 WL 52771 (Tenn. Ct. App. Jan. 10, 2000) (stating that suit under section -307(a)(1)(F) provides the remedy for recovery for deprivation of personal property); Reid v. State, No. 02A01-9807-BC-00191, 1999 WL 528837 (Tenn. Ct. App. July 23, 1999) (stating that section -307(a)(1)(F) "gives the Tennessee Claims Commission jurisdiction over monetary claims against the State arising from the care, custody and control of personal property where the State is negligent in its care, custody and control"); Dean v. Campbell, No. 02A01-9704-CV-00077, 1997 WL 401960 (Tenn. Ct. App. July 17, 1997) (noting that section 9-8-307(a)(1)(F) "has provided adequate procedures to assure the return of items either negligently or intentionally converted" by state prison officials); Clark v. Tennessee Claims Commission, No. 01A01-9212-CH-00482; 1993 WL 286031 (Tenn. Ct. App. July 30, 1993) (claim for negligent loss or conversion of a prisoner's television converter kit); Spence v. Thomas, No. 01A01-9105-CH-00161, 1991 WL 153220 (Tenn. Ct. App. Aug. 14, 1991) (dismissing action filed in chancery court for the recovery of personal property from state employees because Claims Commission has jurisdiction over these claims under section -307(a)(1)(F)). See also Fossett v. State, No. 02A01-9703-BC-00061, 1997 WL 714877 (Tenn. Ct. App. Nov. 19, 1997) (holding that child support payments assigned to the Tennessee Department of Human Services were not "personal property" within the meaning of section -307(a)(1)(F)).

operation. Because section -307(a)(1)(F) contemplates a different type of liability than either section -307(a)(1)(A) or section -307(a)(1)(M), we conclude that a liberal construction of section 9-8-307(a)(1)(F) will not render any other provision of the act unnecessary or mere surplusage. As such, this Court may liberally construe the jurisdiction of the Claims Commission under this provision and still give effect to the remaining grants of jurisdiction in section 9-8-307(a).

Nevertheless, even applying a liberal construction to section -307(a)(1)(F) to permit claims arising from the negligent control of personal property, we find that jurisdiction is still not present under this provision in this case. As soon as Trooper Ray properly released the vehicle, which was in operating condition at the time of the release, his legal duty as to the care, custody, and control of that vehicle ended. When the vehicle later stalled in the middle of the road, the person to whom the car was released requested that the *deputies*, not Trooper Ray, assist her in moving the car. It is undisputed that the deputies did not seek permission from Ray in order to move the car, and no one testified that Ray gave any instructions to do so. When the deputies complied with this request, therefore, they alone assumed the duty of reasonable care with regard to the stalled car. Because Trooper Ray did not reassume control or custody of the Nova at any point after his proper and lawful release of the car, he cannot be said, as a matter of law, to owe a duty to others to exercise reasonable care, custody, or control of that car.[8] Accordingly, we hold that the Claims Commission was also without jurisdiction to hear and adjudicate the plaintiff's claim under section 9-8-307(a)(1)(F).[9]

## ALLOCATION OF FAULT

Because we have concluded that the Claims Commission was without jurisdiction over the plaintiff's claims against the State, the issue of whether the plaintiff was fifty percent (50%) or more at fault for his accident has been rendered moot. Therefore, we reach no determination as to the propriety of the commissioner's findings in this regard.

## CONCLUSION

---

[8] We note that the commissioner was quite clear in his findings of fact and conclusions of law that Trooper Ray was not negligent in failing to call a tow truck. The commissioner found that at the time of the release, the Nova was in working order, and although the car had slipped out of gear, this condition did not prevent the car from being driven. The commissioner also found that Trooper Ray had no discretion to tow a car in this case because the car created no safety hazard and because the release was made according to the wishes of the driver. Therefore, as soon as the commissioner found that Ray neither possessed nor assumed a duty to control the disposition of the car after its proper release, he should have dismissed the claim for lack of subject matter jurisdiction, at least in so far as section 9-8-307(a)(1)(F) provided the basis for such jurisdiction. Accordingly, because Trooper Ray acted with due care in releasing the car, and because Trooper Ray did nothing as a matter of law to reassume custody or control of the vehicle, we find that the Court of Appeals erred in permitting jurisdiction to rest upon Trooper Ray's alleged negligence in failing to tow the Nova.

[9] At the hearing of this case in the Claims Commission, the plaintiff argued that section 9-8-307(a)(1)(A) applied to give the Commission jurisdiction to hear these claims. The parties do not argue before this Court that this section applies, and we find no allegations in either the original or amended complaint that Trooper Ray ever actually operated or maintained the 1974 Nova. Therefore, we conclude that the Claims Commission was also without jurisdiction to hear this case under section 9-8-307(a)(1)(A).

-11-

In summary, we hold that the Tennessee Claims Commission in this case was without jurisdiction to award monetary claims against the State of Tennessee. Because we conclude as a matter of law that Trooper Ray neither possessed nor assumed a legal duty to control local police authorities at the arrest scene, we hold that the Court of Appeals erred in finding jurisdiction under Tennessee Code Annotated section 9-8-307(a)(1)(E), which permits claims against the state for the "[n]egligent care, custody, and control of persons." Moreover, while section 9-8-307(a)(1)(F) applies to claims for damage or loss to personal property, as well as to claims for personal injury *caused by* negligent control of personal property, the Court of Appeals erred in finding that the Claims Commission possessed jurisdiction under this section as well. Finally, as we have concluded that the Claims Commission was without jurisdiction over the plaintiff's claims, we decline to reach the issue of whether the plaintiff was more than fifty percent (50%) at fault for his accident. Accordingly, the judgment of the Court of Appeals finding that the Claims Commission properly exercised jurisdiction is reversed, and the plaintiff's claim against the State of Tennessee is dismissed.

Costs of this appeal are assessed to the plaintiff/appellee, Larry W. Stewart, for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE