IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 12, 2022 Session

## JEFFREY POLHAMUS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sullivan County**
**No. C42206   E. G. Moody, Chancellor**

_____

**No. E2021-01253-COA-R9-CV**
_____

This case arises from a single-vehicle motorcycle accident at the intersection of State Route 1 and State Route 36 within the city limits of Kingsport, Tennessee. The cyclist contends the accident was caused by the failure of the State of Tennessee and the City of Kingsport to properly maintain the state highways; specifically, he alleges that their failure to repair a pothole caused the accident. The plaintiff filed a claim against the State with the Tennessee Division of Claims Administration, and shortly thereafter he commenced this action against the City in the Sullivan County Circuit Court. The claim against the State was later transferred and consolidated with the action against the City. Both the State and the City claimed immunity and moved for summary judgment. The State asserted that it had immunity because the City contractually agreed to maintain the highways where the accident occurred. The City asserted that it had immunity because the State owned the highways where the accident occurred. The trial court granted summary judgment in favor of the City upon the finding the City had immunity because it did not "own" the state highways; however, it denied the State's motion because "[t]o hold that both the State and the City [were] immune from suit would be against public policy." We granted this interlocutory appeal to address whether the State owed a duty to the plaintiff even though it contracted with the City to maintain the highways where the plaintiff's accident occurred. Having closely reviewed the State's contract with the City of Kingsport, we find nothing in the contract or in Tennessee Code Annotated §§ 54-5-201 and -203 that authorizes the State to delegate its responsibilities under § 9-8-307(a)(1)(I) "to exercise reasonable care under all the attendant circumstances in . . . maintaining the State system of highways" and (J) for "[d]angerous conditions on state maintained highways." On the contrary, and as § 54-5-201 expressly provides, "the state's obligation for maintenance of its system of highways shall be governed by those limitations now set out by law, it being the intent of this section neither to enlarge nor to diminish present obligations for this maintenance." Because the State bears the ultimate responsibility for inspecting and maintaining state highways, we find the contract did not absolve the State of potential liability for failing to do so. Therefore, we affirm the trial court's decision.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON II, JJ., joined.

Amanda S. Jordan, Nashville, Tennessee, for the appellant, State of Tennessee.

Jack M. Vaughn, Kingsport, Tennessee, for the appellee, Jeffrey Polhamus.

**OPINION**

**FACTS AND PROCEDURAL BACKGROUND**

On May 26, 2016, Jeffrey Polhamus ("Plaintiff") lost control of his motorcycle and sustained significant injuries after hitting a pothole at the intersection of West Stone Drive/State Route 1 and Lynn Garden Drive/State Route 36 in Kingsport, Tennessee. Both West Stone Drive and Lynn Garden Drive were owned by the State; however, the City of Kingsport had entered into an agreement with the Tennessee Department of Transportation ("TDOT") under Tennessee Code Annotated §§ 54-5-201 and -203, in which the City agreed to, *inter alia*, maintain both state highways.

Plaintiff subsequently filed a claim for damages against the State of Tennessee with the Division of Claims Administration as well as a civil action against the City of Kingsport in the Sullivan County Circuit Court, alleging that the pothole was a dangerous and defective condition and that the State and City were negligent for permitting the condition to exist without repair. Plaintiff's claim against the State in the Division of Claims Administration was later transferred and consolidated with the civil action against the City of Kingsport in the Sullivan County Circuit Court.

After the actions were consolidated in the circuit court, both the State and the City moved for summary judgment. The State acknowledged that it owned the highways where Plaintiff's accident occurred and that Tennessee Code Annotated § 9-8-307 removed its sovereign immunity for negligent maintenance of and dangerous conditions on state highways. Nevertheless, the State asserted that it could not be held liable for Plaintiff's injuries because claims under § 9-8-307 must be based on the acts or omissions of "state employees," and TDOT delegated responsibility for maintaining State Routes 1 and 36 to the City of Kingsport pursuant Tennessee Code Annotated §§ 54-5-201 and -203.

For its part, the City asserted that it could not be held liable under Tennessee Code Annotated § 29-20-203(a), which removes a governmental entity's immunity from suit for injuries on roads when the roads are "owned and controlled" by the entity, because the City did not "own" the roads where Plaintiff's accident occurred.

The trial court agreed that the City retained immunity under § 29-20-203(a) because the City did not own the roads where Plaintiff's accident occurred. Conversely, the trial

court denied the State's motion for summary judgment because "[t]o hold that both the State and the City [were] immune from suit would be against public policy."

We granted the State's application for interlocutory appeal under Tennessee Rule of Appellate Procedure 9 and certified one issue for review:

> Whether the State owes a duty to Plaintiff even though it contracted with the City of Kingsport for the maintenance of West Stone Drive and Lynn Garden Drive.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.* In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

"Issues of statutory interpretation present a question of law, which we review de novo on appeal, giving no deference to the lower court decision." *Kampmeyer v. State*, 639 S.W.3d 21, 23 (Tenn. 2022).

## ANALYSIS

It is well established that the State is immune from all lawsuits except those allowed by the legislature. *See Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (citing Tenn.

Const. art. I, § 17). When the legislature passed the Claims Commission Act, Tenn. Code Ann. § 9-8-301 to -311, it waived immunity for monetary claims based on the acts or omissions of state employees that fall within the categories specified in § 9-8-307(a). *See Mullins v. State*, 320 S.W.3d 273, 279 (Tenn. 2010). In pertinent part, the legislature removed immunity for claims arising from the negligent maintenance of and dangerous conditions on state highways:

> (1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101, falling within one (1) or more of the following categories:
>
> .     .     .     .
>
> (I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways;
>
> (J) Dangerous conditions on state maintained highways. The claimant under this subdivision (a)(1)(J) must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures . . . .

Tenn. Code Ann. § 9-8-307(a).

"The entire statutory purpose of the Tennessee Claims Commission Act is to establish the state's liability in tort based on the traditional tort concepts of duty and the reasonably prudent persons' standard of care." *Lucas v. State*, 141 S.W.3d 121, 130 (Tenn. Ct. App. 2004) (citing Tenn. Code Ann. § 9-8-307(c)). Thus, we have recognized that the State has a duty under § 9-8-307(a)(1)(I) "to exercise reasonable care under all the attendant circumstances in planning, designing, constructing and maintaining the State system of highways." *Goodermote v. State*, 856 S.W.2d 715, 720 (Tenn. Ct. App. 1993) (citing Tenn. Code Ann. § 9-8-307(a)(1)(I)).

In this case, the State argues that it owed no duty to Plaintiff because it delegated responsibility for maintaining the relevant portions of State Routes 1 and 36 to the City of Kingsport under Tennessee Code Annotated §§ 54-5-201 and -203. We respectfully disagree.

Section 54-5-201 establishes that the State's responsibility to maintain state highways extends to municipal streets over which state highway traffic is routed. Nevertheless, it also allows the State to enter into maintenance contracts with municipalities for maintenance services:

(a) The department shall construct, reconstruct and improve streets and maintain the streets in municipalities over which traffic on state highways is routed; or enter into contracts with the municipalities in the state regarding the construction, reconstruction and improvement of streets and maintenance of the streets in municipalities over which traffic on state highways is routed . . . .

(b) (1) The state shall pay all the costs for any highway or parts of the highway designated and adopted by the department as and for a state or state and federal aid highway in the state's system of highways; provided, that a municipality may contribute sums that may be approved by its governing body to the cost.

(2) No municipality shall be required to pay or enter into an agreement to pay any part of the costs.

(3) However, the state's obligation for maintenance of its system of highways shall be governed by those limitations now set out by law, it being the intent of this section neither to enlarge nor to diminish present obligations for this maintenance.

Tenn. Code Ann. § 54-5-201.

Section 54-5-203 provides that "[w]here a municipality is organized for the care of its own streets, the construction, reconstruction, improvement and maintenance may be done by the municipality, which shall be reimbursed by the state; **provided, that all expenditures shall be subject to the approval of the department**." (emphasis added). Thus, although the State was authorized to enter into contracts with municipalities to allow a municipality to maintain state highways within the municipality, the State was required to maintain total control over any and all expenditures for maintenance services rendered by a municipality. Consequently, the State was required to retain total control of the type and extent of maintenance a municipality could perform.

Acting pursuant to § 54-5-201, TDOT contracted with the City of Kingsport for "routine maintenance of state routes," including the portions of State Routes 1 and 36 where Plaintiff's accident occurred. The contract identified 19 types of maintenance work that were "eligible for reimbursement," including "Manual Spot Patching," "Crack Repair," "Surface Replacement," and "Concrete Pavement Repair." The contract specified that "[m]ajor resurfacing" would still "be performed by the [TDOT] as a construction

project." The contract also limited TDOT's liability for damages resulting from the City's work:

> <u>Department Liability</u>. The Department shall have no liability except as specifically provided in this Contract. The Department does not assume any liability for damages caused to persons or property by reason of the [City's] performance of this Contract. The Department assumes no liability for injury to any person or employees of the [City] performing work under this Contract.

The contract, however, expressly stated that the City's work was "subject to monitoring and evaluation" by TDOT. Further, the contract expressly stated that TDOT was "under no obligation to request work from the [City] in any specific dollar amounts or to request any work at all from the [City] during any period of th[e] Contract" and the agreement did not "change the maintenance obligations" of TDOT. The contract also provided that the City could not enter into a subcontract for any of the work without obtaining prior written authorization from TDOT, and TDOT could terminate the contract at any time for any reason, in which case the City would have a right to compensation only for "satisfactory, authorized service completed as of the termination date." Thus, TDOT maintained complete control over what, if any, maintenance could be performed by the City on State Routes 1 and 36.

Having closely reviewed the State's contract with the City of Kingsport, we find nothing in the contract or in §§ 54-5-201 and -203 that authorizes the State to delegate its responsibilities under § 9-8-307(a)(1)(I). On the contrary, § 54-5-201 expressly provides that "the state's obligation for maintenance of its system of highways shall be governed by those limitations now set out by law, it being the intent of this section neither to enlarge nor to diminish present obligations for this maintenance." Although the contract purportedly limits TDOT's liability for injuries caused by the City's performance, it does not and cannot limit the State's liability for injuries caused by the State's negligence in failing to inspect or maintain the roads as prescribed by § 54-5-201.

Although there is little caselaw interpreting § 54-5-201, we find the decision in *Austin v. State*, 796 S.W.2d 449 (Tenn. 1990) to be persuasive. In *Austin*, the plaintiffs filed a claim against the State after their son died in a bridge collapse in Memphis, Tennessee. *Id.* at 449–50. Much like Plaintiff in this case, the plaintiffs in *Austin* asserted a claim under Tennessee Code Annotated § 9-8-307(a)(1)(I) and alleged that "the State had a duty to inspect and maintain [the bridge], that it negligently failed to perform this duty, and that this negligence was a proximate cause of the bridge collapse and resulting death of [their son]." *Id.* at 450. And like this case, the State argued in *Austin* that it was not liable for the son's death because it delegated responsibility to the local government. *Id.* at 455.

At the time, § 9-8-307(a)(1)(I) waived the State's immunity for injuries caused by the negligent maintenance and inspection of highways and bridges "if such activity [was]

- 6 -

mandated or undertaken pursuant to state or federal law." *See id.* at 450 (emphasis omitted). Although federal law required the State to maintain the bridge, a federal regulation allowed the State to delegate its duty to maintain and inspect bridges. *Id.* at 454–55. Significantly, however, the regulation stated that "such agreement shall not relieve the state of its responsibility." *Id.* at 455. Thus, the Court found that "the state [was] not relieved of its responsibility under federal law upon delegation of part of its duties to local government" and held that the State "remain[ed] as the entity mandated to inspect and maintain the bridges." *Id.* Accordingly, the Court found that the State could be held liable for failing to inspect and maintain the bridge. *Id.* at 457.

Like the federal laws at issue in *Austin*, Tennessee Code Annotated § 54-5-201 permits the State to delegate its responsibility to maintain state highways routed over city streets. *See id.* § 201(a). But it also makes clear that "the state's obligation for maintenance of its system of highways shall be governed by those limitations now set out by law, **it being the intent of this section neither to enlarge nor diminish present obligations for this maintenance**." *Id.* § 201(b)(3) (emphasis added). Thus, we find the State's contract with the City did not relieve the State of its responsibilities under § 9-8-307(a)(1)(I) and (J).

For completeness, we acknowledge that the State also argues that it cannot be liable because § 9-8-307(a) applies only to claims based on the acts or omissions of "state employees," which § 8-42-101(3)(A) defines as excluding "any person employed on a contractual or percentage basis." Plaintiff's claim, however, turns on the State's nonfeasance, that being its alleged failure to inspect and maintain state highways, and not on the City's malfeasance. In other words, Plaintiff's claim is based on the alleged negligent omissions of state employees, not negligent acts of city employees.

For these reasons, we find the State's contract with the City for highway repair services did not release the State from its duty under Tennessee Code Annotated § 9-8-307(a)(1)(I) and (J) to maintain the state highways within the City of Kingsport where Plaintiff's accident occurred.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the State of Tennessee.

_____
FRANK G. CLEMENT JR., P.J., M.S.