IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS AUGUST 15, 2007

## DANIEL FRANCOEUR and HEATHER HALL
## v. STATE OF TENNESSEE

Direct Appeal from the Tennessee Claims Commission, Western Division
Nos. 20400165, 20400164    Nancy Miller-Herron, Commissioner

_____

No. W2007-00853-COA-R3-CV  - Filed December 18, 2007
_____

This appeal involves a motorcycle rider and his passenger who were injured in an accident when they
hit a large pothole on a state route highway.  The rider and the passenger each filed claims with the
Tennessee Claims Commission asserting that the State of Tennessee had failed to maintain the
highway in a safe and proper condition.  A Claims Commissioner determined that the pothole did
constitute a dangerous condition on a state maintained highway pursuant to Tennessee Code
Annotated section 9-8-307(a)(1)(J), but she determined that the State was not liable under that
subsection because there was no proof that it had notice of existence of the pothole.  The
Commissioner then found that the State was negligent in maintaining the highway under Tennessee
Code Annotated section 9-8-307(a)(1)(I), and therefore it was liable for the plaintiffs' injuries.  The
State appeals.  We reverse.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Claims Commission Reversed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and
HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Dawn
Jordan, George Coffin, Assistant Attorneys General, Nashville, TN, for Appellant

R. Ray Galbreath, Nashville, TN, for Appellees

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On December 15, 2003, Daniel Francoeur and Heather Hall ("Plaintiffs") each filed an affidavit of complaint with the Tennessee Claims Commission, Middle Division. The complaints alleged that on May 3, 2003, at 4:30 p.m., Plaintiffs were injured in a motorcycle accident in Davidson County on Lebanon Road, which is a state route highway. Mr. Francoeur was driving the motorcycle, and Ms. Hall was a passenger. According to Plaintiffs' complaints, they were near an intersection on Lebanon Road when they "suddenly, without prior warning, hit a large pothole in the road," causing the driver to lose control of the motorcycle. The motorcycle crashed, and Plaintiffs were thrown from the motorcycle.

Plaintiffs alleged that "the proximate cause of this accident was due to the failure of the State to properly maintain the street in question in a safe and proper condition."[1] Both Plaintiffs claimed that they suffered serious personal injuries in the accident, requiring treatment at the emergency room later that day. Mr. Francoeur suffered fractured ribs, a sprained ankle, a groin injury, and injuries to his arm and hand. Mr. Francoeur sought recovery of $6,470.07 in medical bills, $5,294.15 in property damage to the motorcycle, and $31,395.76 in lost income because he claimed that he was unable to work for ninety days following the accident. Ms. Hall injured her leg, ankle, elbow, and hands, and she sought recovery of $1,617.89 for her medical bills. Plaintiffs work together in a truck driving business, and Ms. Hall sought to recover $31,395.76 in lost income "along with Mr. Francoeur."

In its answer, the State denied that it was negligent and denied that its alleged negligence was the proximate cause of the accident. Claims Commissioner Stephanie Reevers recused herself from the cases because she was employed as an Associate Deputy Attorney General at the time that the complaints were filed. The cases were then transferred to the Claims Commissioner for the Western Division, Nancy Miller-Herron. The cases were consolidated and tried on February 9, 2007. Mr. Francoeur testified about the accident, in pertinent part, as follows:

> Q. All right. Just tell us what happened.
> A. We were heading toward the house at the time. We lived in
> Goodlettsville. And we were just enjoying the ride going up
> to Lebanon Road. Again, I don't remember the name of the
> cross street. But we – by the time we topped a – by the time
> I seen the hole, it was too late. I tried to swerve and the first

---

[1] Pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(I), the Tennessee Claims Commission has exclusive jurisdiction to determine all monetary claims against the State involving "negligence in maintenance of highways" that are on the state system of highways. Section 9-8-307(a)(1)(J) gives the Commission exclusive jurisdiction to determine claims involving "[d]angerous conditions on state maintained highways," but under this subsection, the claimant must also establish "the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures."

thing I knew we were laying in the left lane in the middle of the road trying to keep from getting run over.

Q. What lane were you traveling in?

A. I do believe I was in the right lane.

Q. About how fast were you going?

A. I don't go fast on my motorcycle. So, I'm going to guess maybe 20, 25 miles per hour.

Q. And what were the weather conditions like that day?

A. If I remember right, the weather was nice and dry. Naturally I don't go out when it's raining. So, it [sic] have to be a nice day.

. . .

Q. So, you hit a pothole; is that right?

A. Yes. It was quite a large pothole at that.

. . .

Q. How big was this hole that you hit approximately?

A. I'm going to say approximately a foot and a half by 2 foot, possibly 8 or 9 inches deep.

. . .

Q. How long have you been licensed to drive in the State of Tennessee?

A. I've been transporting cars for 33 years.

Q. Have you seen potholes before?

A. Yes, sir.

Q. Do you know what causes them?

A. Yes, sir.

Q. And you know what they look like?

A. Yes, sir.

Q. And you know how they come to be?

A. Yes, sir.

Q. This pothole in your opinion as a motorist did it look like it had been there a while?

A. Yes, sir.

Q. How long?

A. I'm not a pothole expert. I wouldn't really be able to put a time on it. But normally they will start with a small hole and gradually get bigger as vehicles run over it. So, I couldn't put a time. I really wouldn't know. But it's been a while.

Q. But the pothole you hit didn't just form the day before?

A. I don't believe so. No, sir.

Mr. Francoeur also identified four photographs that were taken of the pothole and its location on Lebanon Road, which were entered as exhibits. On cross examination, Mr. Francoeur stated that he

had no knowledge of how long this pothole had existed prior to the date of the accident. He also said that he never called the Tennessee Department of Transportation ("TDOT") to report the pothole, and he had no knowledge of anyone else reporting it, but that he told a police officer about it when he filed an accident report.

Ms. Hall also testified about the accident and the pothole, in relevant part, as follows:

Q.    Just tell us what happened.
A.    . . . We went down Lebanon Road to take that way back home. And as we were coming up the hill coming into the intersection and then the next thing I knew we went into a hole and the bike went over. As soon as I saw the hole, we were on top of it.
. . .
Q.    How big was the hole?
A.    I would say it was a couple of feet in diameter, probably a foot and a half wide and a couple of feet long.
. . .
Q.    All right. And how big – did you tell us how big the hole was?
A.    It was big.
Q.    How big?
A.    It had to be – I don't know. Anywhere from 6 to 10 inches deep. It was right in your tire path. And probably a foot to a foot and a half wide and about 2 foot long.
Q.    Did you see it before?
A.    No, there's an incline. And just as you top the hill and it starts to level off, there's the hole.
Q.    There's the hole.
A.    You couldn't see it until you were on top of it.
Q.    How long have you been driving?
A.    20 years.
Q.    Have you seen potholes before?
A.    Yes, sir.
Q.    Does this look like it's been there a while?
A.    Yes, sir, it did.

Ms. Hall also identified the four photographs and explained that she had taken the photographs herself. During cross examination, Ms. Hall conceded that she was not a "pothole expert" and stated that she did not have personal knowledge about how long the pothole had existed prior to the accident. She also stated that she did not contact TDOT about the pothole and did not know if anyone else had reported it.

The last witness to testify was Mr. Rodney Morris Hollis, the TDOT district maintenance superintendent for highway maintenance in Davidson and Williamson Counties. Mr. Hollis held this position on May 3, 2003, when the accident occurred. Mr. Hollis testified that he was familiar with Lebanon Road, which is State Route 24. However, Mr. Hollis never saw the particular pothole that allegedly caused Plaintiffs' accident, and he did not know how long it had existed before the accident. He stated that TDOT "had no report of it that we could find any records of." After reviewing the photographs of the pothole that allegedly caused Plaintiffs' accident, Mr. Hollis explained how such potholes form:

> Q. During – in your experience as a maintenance supervisor how quickly can a pothole that looks like that showing in Exhibit 1 develop?
> A. It could come out – probably could come out overnight. It don't take long.
> Q. What causes potholes such as shown in Exhibit Number 1 to develop?
> A. Just usually traffic. You get a road that gets a crack or two in it and traffic will keep working into it until it starts coming apart.

Mr. Hollis later stated that he could not tell from the photographs how old the pothole was. He said that it could take weeks for a pothole to get that big. When asked whether potholes could develop and go unrepaired for days or weeks, Mr. Hollis stated that he did not believe that potholes would go unrepaired for that long. He explained that when a large pothole is reported to TDOT's office, someone is dispatched automatically to "check on it." Mr. Hollis also explained that TDOT's maintenance workers patrol the roads "[u]sually once a week," but "[s]ometimes it may not be every week." Mr. Hollis identified "crew date cards" indicating that on May 19, 2003, and April 1, 2003, TDOT patched potholes on Lebanon Road. However, he could not say for certain where on Lebanon Road the work was performed.

On March 15, 2007, Commissioner Miller-Herron entered a detailed final order setting forth her findings, in pertinent part:

> Claimants, Daniel Francoeur and Heather Hall (Spears), bring this action against the State of Tennessee, hereinafter referred to as the State or Defendant, to recover under § 9-8-307(a)(1)(J), relating to dangerous conditions on state highways, and Tenn. Code Ann. § 9-8-307(a)(1)(I), relating to Defendant's alleged negligence in the inspection and maintenance of state highways.
>
> The issues presented are: (1) whether a dangerous condition existed on State Route 24 on May 3, 2003 and, if so, (2) whether Claimants established the forseeability of the risk and notice to proper

-5-

state officials at a time sufficiently prior to Claimants' injury for the State to have taken appropriate measures to correct the condition; (3) whether, prior to Claimants' motorcycle accident on May 3, 2003, Defendant was negligent in its inspection and maintenance of State Route 24 (Lebanon Road) near its intersection with Graylinn Drive; (4) whether Claimants' negligence, if any, contributed to the wreck and, if so, (5) whether Claimants' negligence exceeded the State's negligence, if any, and, finally, (6) the amount of damages suffered by Claimants.

. . .

The Commissioner has thoroughly reviewed the record in this case, including the testimony of the witnesses who appeared at the hearing of this cause, the arguments of counsel and, indeed, the entire record as a whole. After carefully weighing the credibility of each of the witnesses, the Commissioner makes the following findings of fact.

First, the Commission **FINDS** that the Claimants proved the existence of a pothole on State Route 24 on May 3, 2003, which was two feet by one and one half feet in size and somewhere in the range of six to ten inches deep. Claimants also proved that the aforementioned pothole was located on an incline. The Commission **FINDS** that a pothole of that size and in that location amounts to a "dangerous condition."

However, Mr. Hollis testified there were no records indicating that this particular pothole had ever been reported to TDOT, either before or after Claimants' wreck. The only evidence Claimants' offered regarding the notice issue was the Claimants' bare assertions that it looked to them like the pothole had been there awhile.

The Commission **FINDS** that Claimants failed to prove the State of Tennessee had notice of the emergence of the pothole on Lebanon Road. The Commission thus **FINDS** that Claimants failed to prove by a preponderance of the evidence that Defendant violated Tenn. Code Ann. § 9-8-307(a)(1)(J).

The State of Tennessee's entire defense seemed to be based on the argument that it should not be held liable for Claimants' injuries because there was no evidence introduced that the State had notice of the existence of the pothole on State Route 24 prior to

Claimants' wreck.  While Tenn. Code Ann. § 9-8-307(a)(1)(J), regarding dangerous conditions on state highways, requires that the State have notice prior to a finding of negligence, there is no similar notice requirement in § 9-8-307(a)(1)(I), which deals with negligent maintenance of state highways.

As in all negligence cases, Claimants must prove that Defendant owed them a duty of care, that it breached that duty, and that the breach was the cause in fact and legal cause of their injuries. *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991).  It is well-settled that Tennessee has a duty to those lawfully traversing its highways to exercise reasonable care in the maintenance of those highways. *Goodermote v. State*, 856 S.W.2d 715 (Tenn.App. 1993), *perm. app.* denied June 1, 1993.

Thus, to prevail in this case, Claimants must prove that the State failed to exercise reasonable care under the circumstances in the maintenance of State Route 24.  Mr. Hollis, maintenance supervisor for TDOT, testified that TDOT employees inspect the roadways "usually once a week" and that they send a team out to repair large holes as soon as they are reported.

The State apparently keeps no records regarding when employees drive on a specific state roads [sic] looking for maintenance needs.  The State's only maintenance records seem to be "crew cards" which record when repair work actually was done on a given site.  In fact, the State produced no records indicating when, prior to the May 3rd wreck, this stretch of state road had been repaired.  Instead, Hollis testified only to what happened on May 19, 2003, sixteen days after the Claimants' accident, when crew cards indicate potholes were repaired on Lebanon Road.

Although Hollis testified that the policy, at least in his department, is "usually" for the crews to drive the roadways weekly and repair large potholes immediately, the repair work on the potholes on Lebanon Road did not happen, at the earliest, until more than two weeks after Claimants' wreck, indicating either that State employees don't always follow the policy to drive the roadway weekly or they don't always repair large potholes immediately.  Hollis could not even say whether the pothole at issue in this case was repaired on May 19, 2003 or whether it took even longer than sixteen days to repair it.

The Commission **FINDS** that the State breached its duty to Claimants by failing to repair the large pothole on Lebanon Road.

With regard to causation, our supreme court has formulated the following three-prong test for determining whether a defendant's negligence constitutes a proximate cause of the plaintiff's injury:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonable been foreseen or anticipated by a person of ordinary intelligence and prudence. *McClenahan*, 806 S.W.2d at 775 (citations omitted).

Claimants testified that this two foot by one and one half foot pothole, which was between six and ten inches deep, was located on an incline just as you top a hill and that they couldn't see the pothole until they were on top of it. Daniel Francoeur stated that he hit the pothole and the next thing he knew he was lying in the other lane of the roadway. It was unrefuted that this pothole was a substantial factor in bringing about the Claimants' injuries and there seems to be no question that a motorcycle accident such as this was reasonably foreseeable. There was no evidence presented of any negligence on the part of Claimants.

The Commission therefore **FINDS** that Claimants proved by a preponderance of the evidence that Defendant was negligent under Tenn. Code Ann. § 9-8-307(a)(1)(I).

(headings and citations to the record omitted). The order awarded a total of $20,000 in damages to Mr. Francoeur, and Ms. Hall was awarded $9,000. The State filed a timely notice of appeal to this Court.

## II. Issues Presented

The State of Tennessee presents the following issue for our review:

Whether the Claims Commission erred in finding that the State of Tennessee was negligent in failing to repair an allegedly dangerous condition, a pothole, where there was no evidence of actual or constructive notice of the pothole prior to the claimants' injuries and

no evidence that the State had time to repair the pothole prior to the claimants' injuries.

Specifically, the State claims that the Commissioner erred in considering the cases under Tennessee Code Annotated section 9-8-307(a)(1)(I), which involves negligent maintenance of state highways, rather than limiting its review to section 9-8-307(a)(1)(J), addressing dangerous conditions on state maintained highways. Also, the State claims that under either section, "notice and time to repair must be a prerequisite for recovery." For the following reasons, we reverse the Commissioner's decision.

## III. STANDARD OF REVIEW

The decisions of individual Claims Commissioners or, when rendered, decisions of the entire Commission "may be appealed to the Tennessee court of appeals pursuant to the same rules of appellate procedure which govern interlocutory appeals and appeals from final judgments in trial court civil actions . . . ." Tenn. Code Ann. § 9-8-403(a)(1) (Supp. 2007). Accordingly, we review this case *de novo* upon the record with a presumption of correctness of the Commissioner's findings of fact. *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). "Unless the evidence preponderates against the findings we must affirm, absent error of law." *Id.* (citing *Learue v. State*, 757 S.W.2d 3 (Tenn. Ct. App. 1987); Tenn. R. App. P. 13(d)).

> "The determination of negligence claims involves mixed questions of law and fact." *Kelley v. Johnson*, 796 S.W.2d 155, 157 (Tenn. Ct. App. 1990). It is only after a duty on the part of the defendant has been established that the questions of breach and causation arise. *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003). "[W]hether the defendant breached its duty and whether the breach proximately caused the injury are generally questions decided by the trier of fact." *Kelley*, 796 S.W.2d at 157; *see also Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994); *Fairbanks, Morse & Co. v. Gambill*, 142 Tenn. 633, 222 S.W. 5, 7 (1919); *Leatherwood*, 121 S.W.3d at 694. . . . "These questions become questions of law only when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion." *Kelley*, 796 S.W.2d at 157 (citations omitted); *see also Fairbanks, Morse & Co.*, 222 S.W. at 7.

*Hurd v. Flores*, 221 S.W.3d 14, 22, n.2 (Tenn. Ct. App. 2006).

## IV. DISCUSSION

Article I, section 17 of the Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." This

provision of our Constitution "reflects sovereign immunity, the notion that a sovereign governmental entity cannot be sued in its own courts without its consent." ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000). Pursuant to this section, the Tennessee General Assembly created the Tennessee Claims Commission and authorized it to hear and determine certain categories of claims against the State, which are listed in Tennessee Code Annotated section 9-8-307. *See* Tenn. Code Ann. § 9-8-305(1) (1999). The Tennessee Supreme Court has characterized section 9-8-307 as creating a "sweeping procedure for filing monetary claims against the state." ***Northland Ins. Co.***, 33 S.W.3d at 729 (quoting *Hembree v. State*, 925 S.W.2d 513, 516 (Tenn. 1996)). However, the jurisdiction of the Claims Commission is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a), and if a claim falls outside of the categories specified, then the State retains its immunity from suit, and a claimant may not seek relief from the State. ***Stewart v. State***, 33 S.W.3d 785, 790 (Tenn. 2000).

In relevant part, section 9-8-307 provides the following jurisdictional categories:

> (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:
> . . .
> (I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways;
> (J) Dangerous conditions on state maintained highways. The claimant under this subdivision (a)(1)(J) must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

Tenn. Code Ann. § 9-8-307(a)(1)(I)–(J) (Supp. 2007). By its own terms, the statute provides that "[i]t is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn. Code Ann. § 9-8-307(a)(3) (Supp. 2007). Where the statutory language legitimately admits of various interpretations, we will give the statute the most favorable view in support of the petitioner's claim. ***Stewart***, 33 S.W.3d at 791. However, we will not extend the statute's provisions beyond their obvious meaning. ***Id.*** When deciding whether the Claims Commission has jurisdiction to hear and decide a claim against the State of Tennessee, we give a liberal construction in favor of jurisdiction only if (1) the particular grant of jurisdiction is ambiguous and admits of several constructions, and (2) the most favorable view in support of the petitioner's claim is not clearly contrary to the statutory language used by the

General Assembly. *Id.* In addition, because issues of statutory construction are questions of law, we review the issues involving the jurisdiction of the Claims Commission *de novo* without any presumption that the legal determinations of the Commissioner were correct. *Id.* (citations omitted).

We first address the State's argument that it was improper for the Commissioner to decide these claims under Tennessee Code Annotated section 9-8-307(a)(1)(I) rather than limiting its analysis to section 9-8-307(a)(1)(J). Again, subsection (I) authorizes the Commission to hear claims involving "negligence in maintenance of highways" that are designated by TDOT as being on the state system of highways. Section (J) grants the Commission jurisdiction to hear claims involving "[d]angerous conditions on state maintained highways," but the claimant must prove that state officials had notice of the condition and time to take appropriate measures. The determination of the State's tort liability under both of the categories is based on traditional tort concepts of duty and the reasonably prudent person's standard of care. Tenn. Code Ann. § 9-8-307(c) (Supp. 2007).

On appeal, the State does not cite any authority to support its contention that these claims could not be considered under both subsection (I) and subsection (J). The State simply insists that the claim should be analyzed under the "dangerous condition" portion of the statute "to prevent any confusion." The State further argues that "[w]hile the case may technically raise issues of alleged negligent maintenance, the claim is in reality for alleged negligence in failing to repair a dangerous condition." It then insists that Plaintiffs' claim "did not fit" into the "negligent maintenance" category of subsection (I).

We find no merit in the State's contentions. Tennessee Code Annotated section 9-8-307(a)(1) clearly contemplates that a plaintiff's claim may fall within more than one of the jurisdictional categories, as it authorizes the Commission to determine all monetary claims against the State "falling within one (1) *or more* of the following categories." (emphasis added). In *Stewart v. State*, 33 S.W.3d 785, 795 (Tenn. 2000), the State similarly argued that the Supreme Court should not liberally construe a jurisdictional category to encompass a plaintiff's claim when the claim arguably could have been analyzed under two other, more specific subsections. The plaintiff had filed a claim alleging that a state highway patrol officer was negligent in failing to have a vehicle towed from the scene of an arrest. *Id.* at 794. The plaintiff contended that the officer's actions fell within the coverage of section 9-8-307(a)(1)(F) as "[n]egligent care, custody or control of personal property." *Id.* The State argued that "such a construction would render inoperative two other specific grants of jurisdiction: section [9-8]-307(a)(1)(A), which permits claims arising from the 'negligent operation or maintenance of any motor vehicle,' and section [9-8]-307(a)(1)(M), which permits claims arising from the '[n]egligent operation of machinery or equipment.'" *Id.* at 795. The Supreme Court disagreed because the proof needed to establish the "operation or maintenance" of an automobile or machinery under subsections (A) and (M) would be different than the proof needed to establish "care, custody or control" of the same items under subsection (F). *Id.* In that case, for example, the officer could have been in control of the vehicle even though he was not operating or maintaining it. *Id.* Accordingly, the Court concluded that subsection (F) "contemplates a different type of liability" than subsections (A) or (M), and that a liberal construction of subsection (F) would

"not render any other provision of the act unnecessary or mere surplusage." ***Id.*** The Court could liberally construe subsection (F) and still give effect to the other categories of jurisdiction.[2] ***Id.***

We have encountered cases considering claims against the State under both of the subsections at issue in this case: subsection (I) for negligent highway maintenance, and subsection (J) for dangerous conditions on highways. For example, in ***Allen v. State***, No. M2003-00905-COA-R3-CV, 2004 WL 1745357, at *1 (Tenn. Ct. App. Aug. 3, 2004), plaintiffs sought damages for injuries arising out of a car accident under section 9-8-307(a)(1)(I) and (J), alleging that the State used road surfacing materials that became slippery over time. The Claims Commission found that the State was liable under both sections, concluding that the State's conduct "constituted 'negligence in maintenance of highways,' as that phrase appears in Tennessee Code Annotated section 9-8-307(a)(1)(I), and that the State's conduct resulted in the existence of 'dangerous conditions on state maintained highways,' as that phrase is used in Tennessee Code Annotated section 9-8-307(a)(1)(J)." ***Id.*** at *4. On appeal, the Middle Section of this Court affirmed. The Court first analyzed section 9-8-307(I) (negligent maintenance) and found that it was "a proper basis for finding liability of the state without regard to Tennessee Code Annotated section 9-8-307(a)(1)(J)." ***Id.*** at *8. The Court stated that "[i]n view of our holding as to the liability of the state under subsection (I) it is not necessary to further consider the liability of the state under subsection (J) . . . ." ***Id.*** However, the Court went on to address subsection (J) and found that the evidence supported the trial court's finding that the State would have been liable under that subsection as well because it had notice of the dangerous condition of the highway. ***Id.*** Thus, the State could have been held liable under either subsection of Tennessee Code Annotated section 9-8-307. *See also **Deas v. State***, No. W2003-02891-COA-R3-CV, 2004 WL 2715318, at *3-6 (Tenn. Ct. App. Nov. 19, 2004) (considering whether the State was negligent in maintaining the shoulder of a road under subsection (I), then considering whether the shoulder was a dangerous condition under subsection (J)).

The proof necessary to establish a claim under subsection 9-8-307(a)(1)(I) is different than the proof needed to establish a claim under subsection 9-8-307(a)(1)(J). Again, subsection (I) permits claims arising from

> [n]egligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways.

---

[2] The Court went on to analyze the claim under subsection (F) and concluded that the trooper was not negligent because his duty as to the care, custody and control of the vehicle had ended when county sheriff's deputies assumed control or custody of the car. ***Stewart***, 33 S.W.3d at 795-96.

Tenn. Code Ann. § 9-8-307(a)(1)(I) (Supp. 2007).  Subsection (J) authorizes claims involving "[d]angerous conditions on state maintained highways" if the claimant can establish "the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures."  Tenn. Code Ann. § 9-8-307(a)(1)(J) (Supp. 2007).  Although these subsections may sometimes overlap, one does not render the other unnecessary, or mere surplusage.[3]  Negligent design and maintenance of a highway "can result in creating road conditions which cause accidents."  ***Atkins v. State***, No. E2003-01255-COA-R3-CV, 2004 WL 787166, at *5 (Tenn. Ct. App. Apr. 14, 2004).  In other words, the State's negligence in planning, constructing, or maintaining a highway under subsection (I) may ultimately create a "dangerous condition" under subsection (J).

> The decision of whether a condition of a highway actually is a dangerous and hazardous one to an ordinary prudent driver is a factual one, and the court should consider the physical aspects of the roadway, the frequency of accidents at that place in the highway and the testimony of expert witnesses in arriving at this factual determination. *Besnard v. Department of Highways*, 381 So.2d 1303 (La. App. 4th Cir. 1980), *writ denied.* 385 So.2d 1199 (La. 1980).

***Sweeney v. State***, 768 S.W.2d 253, 255 (Tenn. 1989) (citing *Holmes v. Christopher*, 435 So.2d 1022, 1026 (La. App. 4th Cir. 1983)).  However, a claim that satisfies subsection (I) will not always fall within subsection (J), and vice versa.  For example, in considering an accident that occurred on a dangerous curve, the Supreme Court stated in ***Sweeney*** that it found no evidence to support a cause of action under subsection (I) for negligence by the State.  ***Id.*** at 254.  Nevertheless, the Court found that the State had notice of the dangerous condition of the highway and was therefore liable under subsection (J).  ***Id.*** at 259.  Conversely, in ***Atkins***, where an accident occurred at a temporary connector road, the State was not liable under subsection (J) because it had no notice of a dangerous condition at that location; however, it was liable under subsection (I) for failing to properly plan, install, and maintain the road in compliance with industry standards.  2004 WL 787166, at *6.  Clearly, subsection (I) and subsection (J) require different elements and contemplate different types of liability.

This brings us to the State's second assignment of error in this case, that under either subsection (I) or (J), "notice and time to repair must be a prerequisite for recovery."  We find no merit in the State's assertion.  The statute clearly provides that a claimant under subsection (J) must establish the foreseeability of the risk and that notice was given to the proper state officials at a time sufficiently prior to the injury for the State to have taken appropriate measures.  Tenn. Code Ann.

---

[3] It appears that the subsections at issue in ***Stewart***, 33 S.W.3d at 794, could overlap in certain situations, as a state employee's negligent operation of a motor vehicle under subsection (A) could also, depending on the facts, be construed as negligent care, custody or control of personal property under subsection (F).  However, the subsections do not always overlap, as the Supreme Court explained in ***Stewart***.  The subsections contemplate different types of liability because "the element of control simply does not *equate to* that of operation or maintenance."  ***Id.*** at 795 (emphasis added).

§ 9-8-307(a)(1)(J) (Supp. 2007). There is no such requirement in subsection (I). Cases interpreting these two subsections have clearly held that "[t]he provisions requiring 'notice' are only applicable to subsection (J) and not to subsection (I)." **Allen v. State**, No. M2003-00905-COA-R3-CV, 2004 WL 1745357, at *8 (Tenn. Ct. App. Aug. 3, 2004). Contrary to the State's assertions, "[t]he notice issue is applicable only as a prerequisite to liability of the state under Tennessee Code Annotated section 9-8-307(a)(1)(J)." **Id.** at *4.

It is clear that proving notice is not a "prerequisite for recovery" under Tennessee Code Annotated section 9-8-307(a)(1)(I), as the State contends. **Allen**, 2004 WL 1745357, at *4. However, the State's lack of notice is still relevant to the negligence analysis. Under general principles of the law of negligence, a plaintiff must establish that the defendant owed a duty of care to the plaintiff, injury or loss, *conduct of the defendant falling below the applicable standard of care which amounted to a breach of the duty*, causation in fact, and proximate, or legal, cause. **Goodermote v. State**, 856 S.W.2d 715, 720 (Tenn. Ct. App. 1993) (citing *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991)). It is well-settled that the State has a duty to exercise reasonable care, under all the attendant circumstances, in planning, designing, constructing, and maintaining the state system of highways, and it owes this duty to persons lawfully traveling Tennessee highways. **Id.** (citing Tenn. Code Ann. § 9-8-307(a)(1)(I)). However, the State is not the insurer of the safety of persons who travel the highways. *Cf.* **Bowman v. State**, 206 S.W.3d 467, 472 (Tenn. Ct. App. 2006) (discussing State liability under section 9-8-307(a)(1)(C) for injuries caused by negligently created or maintained conditions on state controlled real property). In other words, the bare fact that a pothole existed on a state road is not sufficient to prove that the State was negligent in maintaining the road. Plaintiffs must establish that the State's conduct fell below the applicable standard of care, which amounted to a breach of its duty to exercise reasonable care in maintaining the highways.

In this case, Plaintiffs testified they hit a large pothole that looked like it had been there "a while." However, they could not say how long it had actually existed. Plaintiffs had no knowledge of anyone reporting the pothole to TDOT. Mr. Hollis, the TDOT district maintenance supervisor, testified that TDOT employees usually patrol the roads once a week looking for potholes or safety concerns. He also explained that citizens or police officers may report large potholes to TDOT, in which case someone is dispatched automatically to "check on it," and a supervisor sends a crew out to repair it. Regarding this particular location, Mr. Hollis testified that TDOT had no record of anyone reporting the pothole. He examined photographs of the pothole and testified that potholes such as this one do not take long to develop, and could even develop overnight.

Considering all the evidence, we find that Plaintiffs failed to establish that the State breached its duty to exercise reasonable care, under all the attendant circumstances, in maintaining the highway. The simple fact that Plaintiffs hit a pothole is not sufficient to impose liability on the State pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(I). Plaintiffs failed to prove that the State was negligent in inspecting the highway or failing to discover and repair the pothole.

In sum, we conclude that the Claims Commissioner did not err in considering Plaintiffs' claims under Tennessee Code Annotated section 9-8-307(a)(1)(I) after she concluded that section

9-8-307(a)(1)(J) was inapplicable. However, we further conclude that Plaintiffs did not establish the State's "negligence in maintenance" of the highway under subsection (I) to impose State liability for Plaintiffs' injuries.

## V.   CONCLUSION

For the aforementioned reasons, we reverse the decision of the Tennessee Claims Commission, and the plaintiffs' claims against the State of Tennessee are dismissed. Costs of this appeal are taxed to the appellees, Daniel Francoeur and Heather Hall.

_____

ALAN E. HIGHERS, P.J., W.S.