FILED

12/03/2025

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2025 Session

## CHEVY CHASE G.I. INVESTORS, L.C. v. AMSURG HOLDINGS, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 24-0505-III      I'Ashea L. Myles, Chancellor**

_____

### No. M2024-01187-COA-R3-CV

_____

This is an action to enforce a 2020 arbitration award (the "Award"), which was confirmed by the Chancery Court for Davidson County in 2021. The subject of the arbitration was Chevy Chase ASC, LLC ("CCASC"), a two-member Tennessee limited liability company, which was formed and operated by Chevy Chase G.I. Investors, L.C. ("Plaintiff"), and AmSurg Holdings, Inc.[1] ("Defendant"). The Award stated, in pertinent part, that the voluntary dissolution of Plaintiff would "trigger the mandatory dissolution" of CCASC. Following Plaintiff's voluntary dissolution, however, Defendant refused to dissolve or wind up the affairs of CCASC. Defendant contended that it had the statutory right under the "dissolution avoidance" provision of Tennessee Code Annotated § 48-245-101(b) to continue operating CCASC as a single-member limited liability company. Relying on the Award and the 2021 court order confirming the Award, Plaintiff commenced this action to compel Defendant to dissolve CCASC and wind up its business affairs. Finding the Award to be unambiguous, the Chancellor ordered "the immediate liquidation and dissolution of CCASC." This appeal followed. Finding no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

W. Brantley Phillips, Jr., Matthew J. Sinback, and Sara K. Morgan, Nashville, Tennessee, and Brian R. Iverson, Washington, D.C., for the appellant, AmSurg Holdings, Inc.

John G. Jackson and Catherine S. Dorvil, Chattanooga, Tennessee, for the appellee, Chevy Chase G.I. Investors, L.C.

_____

[1] According to the Tennessee Secretary of State, AmSurg Holdings, Inc. changed its name to AmSurg Holdings, LLC July 2, 2024. The entity's new name is used in some of the filings.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In 1996, Plaintiff and Defendant formed CCASC as a two-member Tennessee limited liability company ("LLC") to operate an ambulatory surgical center in Chevy Chase, Maryland.[2] Contemporaneously, the parties executed an operating agreement (the "Operating Agreement") to govern the operations of their business and the relations between its members, with Defendant having a 51% interest and Plaintiff having a 49% interest.

After more than twenty years, Plaintiff and Defendant's business relationship declined to the point that Plaintiff informed Defendant that it intended to voluntarily dissolve, which event, Plaintiff asserted, would mandate the dissolution of CCASC and the winding up of its business. Defendant disagreed, and negotiations over a buyout were unsuccessful, resulting in a stalemate.

Consequently, in 2019, Plaintiff initiated arbitration to determine, *inter alia*, whether its voluntary dissolution would require the mandatory dissolution of CCASC. Initially, Defendant did not raise any counterclaims in the arbitration proceedings, stating in a filing that it did not intend to continue operating the business of CCASC if Plaintiff dissolved. However, it later asserted that it would continue operating the business of CCASC as the sole member once Plaintiff dissolved.

The issues as presented by the parties, and their respective proposed determinations/answers, were restated in the Award as follows:

a. [Plaintiff]: Whether the voluntary "dissolution" of [Plaintiff] will trigger the mandatory dissolution of CCASC without subjecting [Plaintiff] to liability for damages under the CCASC Operating Agreement or the Prior LLC Act.

[Plaintiff's] proposed answer: The voluntary dissolution of [Plaintiff] triggers the mandatory dissolution of CCASC. If [Plaintiff] voluntarily dissolves, [Plaintiff] is not subject to liability for damages under the CCASC Operating Agreement or any provision of the Prior LLC Act.

---

[2] As stated in the Award: Defendant "develops and operates ambulatory surgery centers in partnership with physician practice groups throughout the United States," and Plaintiff "is an entity owned by various practicing physicians that was created to serve as a holding company for those physicians' interests in their joint business with [Defendant]—the parties' ambulatory surgery center (ASC), known as the Chevy Chase ASC, LLC."

b.  [Defendant]: Would the threatened dissolution of [Plaintiff] (i) violate the LLC Act or (ii) constitute a prohibited withdrawal under the parties' Operating Agreement?

[Defendant's] Proposed Answer: Yes. The dissolution of [Plaintiff] would terminate [Plaintiff's] membership interest in violation of the LLC Act and constitute a wrongful withdrawal in violation of Section 4.5 of the [CCASC] Operating Agreement.

Following briefing, a hearing, and post-hearing briefing, the arbitration panel ruled that "the voluntary dissolution of [Plaintiff] mandates a dissolution of CCASC without exposing [Plaintiff] to any damages under the Operating Agreement or the Prior LLC Act."

In discussing its ruling, the arbitration panel noted that "this case turns on the Agreement, and not just the parties' well recognized freedom to enter into it, but the freedom to include or exclude language within the Agreement that proves critical in determining the issues the parties raise in this case." The panel also noted in the Award:

7.  . . . [T]he Agreement takes on special import considering Section 48-201-101 of the applicable LLC Act (the "Act"). This Section of the Act is central to [Defendant]'s contention that the dissolution of [Plaintiff] constitutes a termination that is violative of the Act and is, therefore, a wrongful withdrawal under Section 4.5 of the Agreement. This Section of the Act expressly permits termination of membership for reasons other than those set forth in the statute if they are provided for in the operating agreement. Similarly, Section 48-245-201 gives the same deference to the operating agreement in terms of what constitutes an event of dissolution. Furthermore, it is well settled that freedom to contract extends to the parties' freedom to trump statutory provisions and to contract with respect to events of dissolution. Therefore, it is essential in this case to focus on the Agreement and properly construe it in accordance with the traditional standards of contract interpretation and, as the parties agree, in accordance with the plain and ordinary meaning of its terms.

8.  The written words of the Agreement lead our interpretation, as they act "as the lodestar" of its interpretation. The words these sophisticated and experienced parties consciously and freely chose to include in the Agreement, but also the words they chose not to include, direct our path of contract construction and what these parties intended, specifically in terms of the issues before us. Accordingly, we cannot form a new contract for the parties "under the guise of contract interpretation" even though the Agreement "may contain

terms which may be thought harsh and unjust." These guiding principles are particularly salient and germane in this case where it is clear and express that these parties individually negotiated the provisions of the Agreement, each relying on their own learned counsel in negotiating all the terms of the Agreement and not on each other.

9.  The three most pertinent provisions of the Agreement, Sections 4.5, 12.4 and 13.2 must be read together, but it is appropriate for our purposes to begin with Section 13.2—*Events Causing Dissolution and Winding Up*. The dissolution of [Plaintiff] constitutes a dissolution event under this section, and, upon the dissolution of [Plaintiff], [CCASC] must be dissolved and its affairs wound up. Accordingly, the first part of [Plaintiff]'s "Question Presented," "Whether the voluntary 'dissolution' of [Plaintiff] will trigger the mandatory dissolution of CCASC . . . ," is clearly answered in the affirmative. But, the question must be read as a whole, and it is the second part of the question that is the determinative issue in this case: ". . . without subjecting [Plaintiff] to liability for damages under the CCASC Operating Agreement or the Prior LLC Act?" In other words, as [Defendant] contends, is the dissolution of [Plaintiff] tantamount to a prohibited withdrawal under Section 4.5 of the Agreement and, therefore, wrongful, or a wrongful termination of its membership interest under the Act?

(Footnotes omitted).

After considering and discussing the analysis of arbitration panels in other arbitrations cited by the parties,[3] the panel ruled:

15.  Based on the foregoing, we find that the "Question Presented" by Claimant is the correct and determinative question in this case: "Whether the voluntary 'dissolution' of [Plaintiff] will trigger the mandatory dissolution of CCASC without subjecting [Plaintiff] to damages under the CCASC Operating Agreement or the Prior LLC Act?" And, we find that the question should be answered in the affirmative as [Plaintiff] suggests, the voluntary dissolution of [Plaintiff] mandates a dissolution of CCASC without exposing [Plaintiff] to any damages under the Operating Agreement or the Prior LLC Act.

---

[3] The arbitration decisions discussed in the Award include *Northeast Eye Institute v. AmSurg Holdings, Inc., et al.* and *St. Elizabeth Physician Services, LLC v. AmSurg Holdings, Inc.*

.   .   .

We, therefore, Order, Declare and AWARD as follows:

1. The voluntary dissolution of [Plaintiff] will trigger the mandatory dissolution of [CCASC].

2. If [Plaintiff] voluntarily dissolves, [Plaintiff] is not subject to liability for damages under the Agreement or any provision of the Prior LLC Act.

.   .   .

4. This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Thereafter, Plaintiff filed a petition for confirmation of arbitration award and entry of judgment in the Chancery Court for Davidson County. *See Chevy Chase G.I. Investors, L.C. v. AmSurg Holdings, Inc.*, No. 20-1177-III (Davidson Cnty. Ch. Ct. Feb. 3, 2021). Defendant did not oppose the confirmation petition. On February 3, 2021, the chancery court entered its Final Order (the "Final Order"), confirming the Award and entering judgment in conformity with the Award. *See id*. No appeal was taken from this judgment.

In March of 2024, Plaintiff filed articles of cancellation to terminate its existence as a business entity. Contemporaneously, Plaintiff notified Defendant of its dissolution and demanded that Defendant dissolve CCASC and wind up its business affairs.[4] Defendant refused to do so. Instead, Defendant continued operating CCASC as a surgery center, ostensibly as a single-member LLC.

One month later, on April 15, 2024, Plaintiff commenced this action seeking to enforce the Award and the Final Order and to hold Defendant in contempt for continuing to operate CCASC after Plaintiff had voluntarily dissolved.

On May 16, 2024, Defendant moved to dismiss the complaint, asserting that it had a statutory right, based on the "dissolution avoidance" provision of Tennessee Code Annotated § 48-245-101(b), to continue CCASC as a one-member LLC. The statute, which went into effect in 1999, provides that "notwithstanding" a dissolution event, "the LLC is not dissolved and is not required to be wound up by reason of any event that terminates the continued membership of a member if there is at least one (1) remaining member and the

---

[4] Plaintiff represents in its brief that Defendant, which owns 51 percent of CCASC, is the Chief Manager of CCASC and is obligated by the Operating Agreement to effect the dissolution and windup of CCASC upon the dissolution of Plaintiff.

existence and business of the LLC are continued by the consent of a majority vote of the remaining members." Tenn. Code Ann. § 48-245-101(b).

On May 31, 2024, the court heard oral arguments on Defendant's Motion to Dismiss and Plaintiff's request that Defendant be ordered to immediately dissolve and wind up the affairs of CCASC. In a ruling from the bench, the Chancellor denied Defendant's motion, rejected Defendant's argument that it had a statutory right to continue the business of CCASC as a single-member LLC, and ordered that CCASC be dissolved immediately.

On June 26, 2024, Plaintiff filed a supplemental memorandum informing the court that Defendant had refused to dissolve and, instead, had "elected to continue the existence of [CCASC]." Two days later, citing its dissolution avoidance consent rights, Defendant filed a response explaining its "good faith belief" that it had the right to continue operating the LLC and that doing so was necessary to preserve its appellate remedy.

In an order entered on July 10, 2024, the Chancellor denied the Motion to Dismiss and ordered Defendant to dissolve the CCASC immediately. In pertinent part, the court's ruling noted that the arbitration panel analyzed the Operating Agreement in connection with § 48-245-101 and found:

> Ultimately, the [arbitration] panel held the following: "1. The voluntary dissolution of [Plaintiff] will trigger the mandatory dissolution of [CCASC]. . . ."

> .    .    .    .

> Based on the foregoing Arbitration Award, the Court finds that the Award's "mandatory trigger" requirement contains no exceptions, including the so-called "dissolution avoidance" exception that was argued by [Defendant] and considered but rejected by the panel.

> .    .    .    .

> . . . The previous Court not only reviewed the Arbitration Award in this case, but also reduced it to a Final Order which was not appealed or set aside.

> [Defendant] has asked this Court to revisit matters already addressed and presented before the panel. However, this Court finds that the Arbitration Award is unambiguous, and the panel asserted that it considered all arguments presented before it. Based on the foregoing, this Court finds that it is without jurisdiction to revisit claims which have been submitted and finally ruled upon by the arbitration panel.

- 6 -

Thereafter, Defendant moved to certify the July 10 order as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure and requested a stay until an appeal of the order was decided. Plaintiff opposed on the grounds that any appeal would be frivolous and requested a "substantial" bond if Defendant's motion was granted. Plaintiff also requested the appointment of a receiver or special master to carry out the enforcement of the court's order to dissolve.

In an amended order entered on August 5, 2024, the Chancellor certified the order as a final judgment under Rule 54.02, set an appeal bond at $850,000, and stayed enforcement of its order pending appeal. This appeal followed.

## ISSUES

Defendant raises five issues on appeal:

1. Whether the Chancellor erred by reading the Award to bar Defendant from exercising the dissolution avoidance consent rights conferred by Tennessee Code Annotated § 48-245-101(b) despite the Award's total silence on Defendant's ability to invoke those statutory rights.

2. Whether the Chancellor improperly modified the Award in contravention of Tennessee Code Annotated § 29-5-325 by imposing a mandatory injunction even though the Award granted only declaratory relief.

3. Whether the Chancellor erred by failing to enforce the Operating Agreement, which bars Plaintiff from seeking the appointment of a receiver or judicial dissolution of the limited liability company.

4. Whether the Chancellor erred by ordering Defendant to dissolve CCASC and denying Defendant's Motion to Dismiss despite Plaintiff's failure to plead or prove irreparable harm.

5. Whether the Chancellor erred by denying Defendant's Motion to Dismiss the claim for civil contempt despite Plaintiff's failure to plead that Defendant disobeyed a clear, specific, and unambiguous court order.

## STANDARD OF REVIEW

The principal issue before us is the interpretation and enforcement of an arbitration award. "In all cases warranting judicial review of arbitration awards, the trial court 'must accord deference to the arbitrators' awards.'" *D & E Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518 (Tenn. 2001) (citing *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d

445, 448 (Tenn. 1996)). And as our Supreme Court has explained, the appellate courts are also required to apply a deferential standard of review:

> [W]hen an appellate court reviews a trial court's decision in an arbitration case, "it should review findings of fact under a 'clearly erroneous' standard, [that is,] accept those facts as found unless clearly erroneous." Moreover, we are "not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misrepresentation of the contract." Where, as here, the issues presented are questions of law, we must resolve the matter "with the utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution."

*D & E Const. Co.*, 38 S.W.3d at 518 (citations omitted) (quoting *Arnold*, 914 S.W.2d at 450).

Other issues presented in this appeal are subject to a de novo standard of review. A trial court's conclusions of law are reviewed de novo, with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). "[T]he proper interpretation of a judgment is a question of law." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 356 n.19 (Tenn. 2008). The interpretation of written agreements is a question of law, which is reviewed "de novo on the record according no presumption of correctness to the trial court's conclusions of law." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). And issues of statutory construction are also questions of law, which are reviewed "de novo, according no presumption of correctness to the conclusions reached by the trial court." *Ki v. State*, 78 S.W.3d 876, 879 (Tenn. 2002) (quoting *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000)).

**ANALYSIS**

I. DISSOLUTION AVOIDANCE

For its first issue, Defendant contends that the chancery court erred by holding that the Award negated Defendant's statutory dissolution avoidance consent rights, citing Tennessee Code Annotated § 48-245-101(b). In support of this argument, Defendant asserts:

> The Tennessee LLC Act expressly provides that an event triggering dissolution does not mandate the LLC's winding up and final dissolution if the remaining members decide to continue its existence and business. Nothing in the 2020 Award cites, discusses, or mentions this statutory provision in any way. Given the 2020 Award's silence on this point, as well as the fact that neither party filed a claim for a declaration about

[Defendant's] Dissolution Avoidance Consent rights, it was error for the Chancellor to read the 2020 Award as voiding this unambiguous statutory right.

Plaintiff counters this argument, noting that the Chancellor correctly found that the Award unambiguously ordered that the dissolution of Plaintiff would trigger the mandatory dissolution of CCASC with no exceptions. Plaintiff contends in pertinent part:

First, [Defendant] previously (and unsuccessfully) argued its "dissolution avoidance" defense in a brief filed in the arbitration proceeding. In ordering that the dissolution of [Plaintiff] mandates the dissolution of the [CCASC], the Panel made clear that its Award considered "the allegations of the parties, the arbitration briefs, arguments of counsel . . . and the entire record in this cause." Chancellor Myles properly found that the Award's "'mandatory trigger' requirement contains no exceptions, including the so-called 'dissolution avoidance' exception that was argued by [Defendant] and considered but rejected by the Arbitration panel." Further, [Defendant] does not have dissolution avoidance rights in any event. In addition, [Defendant] is collaterally estopped from relitigating an issue that was briefed by [Defendant] during the arbitration and decided by the Panel.

The record confirms that the dissolution avoidance statute and issue were briefed in the arbitration proceeding. This is significant because in cases warranting judicial review of arbitration awards, the trial court and this court must treat awards reached through arbitration proceedings deferentially. *D & E Const. Co.*, 38 S.W.3d at 518 (citing *Arnold*, 914 S.W.2d at 448). Stated another way, we are "not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misrepresentation of the contract." *Arnold*, 914 S.W.2d at 450 (citations omitted). Thus, whether the arbitration panel correctly decided the dissolution avoidance issue as a matter of fact or a matter of law is beyond our review.

In the Operating Agreement, the parties agreed to organize CCASC under the Tennessee Limited Liability Company Act (the "Act"), "as amended from time to time, and any corresponding provisions of any successor legislation." As amended in 1999, three years after CCASC's founding, the Act included § 48-245-101(b), covering dissolution of LLCs, which states in pertinent part:

Notwithstanding [events triggering dissolution], the LLC is not dissolved and is not required to be wound up by reason of any event that terminates the continued membership of a member if there is at least one (1) remaining member and the existence and business of the LLC are continued by the consent of a majority vote of the remaining members or such greater vote of the remaining members as provided in the articles.

- 9 -

Tenn. Code Ann. § 48-245-101(b). Thus, absent a contractual agreement to the contrary, the dissolution avoidance provision may apply to CCASC and its members. Nevertheless, as the arbitrators explained in the Award, the parties may contractually agree to trump a statutory provision,[5] which is the case here.

Section 13 of the Operating Agreement covers "Dissolution, Winding Up, And Termination Of The LLC's Existence." The Agreement states that "Events Causing Dissolution and Winding Up" include "Dissolution of any Member," yet includes no provisions for dissolution avoidance. Whether this omission means that § 48-245-101(b) does or does not afford Defendant the statutory right to continue CCASC once Plaintiff dissolves[6] is not for us to decide because that issue was decided by the arbitration panel. This is evident because the dissolution avoidance statute was briefed in the arbitration proceeding. Moreover, the primary issue for the panel to decide was whether Plaintiff's voluntary dissolution would trigger, indeed mandate, the dissolution of CCASC. The panel ruled in the affirmative, determining that Plaintiff's dissolution triggered the mandatory dissolution of CCASC.

The panel also ruled, "This Award is in full settlement of all claims submitted to this Arbitration. **All claims not expressly granted herein are hereby denied**." (Emphasis added). Thus, Defendant's claim that it had the unilateral option, indeed the statutory right, to avoid dissolution of CCASC was denied by the arbitration panel. And regarding the arbitration panel's decisions, "we are not permitted to consider the merits of an arbitration award, even in instances where the award is based on factual errors." *MidSouth Constr., LLC v. Burstiner*, No. M2023-01396-COA-R3-CV, 2025 WL 1663550, at *6 (Tenn. Ct. App. June 12, 2025) (citing *Arnold*, 914 S.W.2d at 450).

Moreover, as stated by the panel in its Award, "The dissolution of [Plaintiff] constitutes a dissolution event under [Section 13.2], and, **upon dissolution of [Plaintiff], [CCASC] must be dissolved, and its affairs wound up**." (Emphasis added). However, Defendant contends that "[t]he Tennessee LLC Act expressly provides that an event triggering dissolution [that event being Plaintiff's dissolution] does not mandate the LLC's winding up and final dissolution if the remaining members decide to continue its existence and business." Accordingly, for us to rule as Defendant suggests, that Defendant may continue operating CCASC as a single-member LLC, would render the mandate in the

_____

[5] The Award reads in pertinent part: "Furthermore, it is well settled that freedom to contract extends to the parties' freedom to trump statutory provisions and to contract with respect to events of dissolution."

[6] Defendant refers to Plaintiff's dissolution as an event triggering dissolution. As it argues in its brief before this court, "The Tennessee LLC Act expressly provides that an event triggering dissolution does not mandate the LLC's winding up and final dissolution if the remaining members decide to continue its existence and business."

Award meaningless because the Award requires that CCASC not only be dissolved but that CCASC's "affairs [be] wound up."

Thus, we affirm the Chancellor's ruling that the Award is unambiguous, and that Defendant does not have the right to avoid the dissolution of CCASC or to continue the existence of CCASC, Tennessee Code Annotated § 48-245-101(b) notwithstanding.

## II. MODIFICATION OF THE AWARD

Defendant contends that the Chancellor improperly modified the Award in violation of Tennessee law. Specifically, Defendant contends that Plaintiff sought only declaratory relief in arbitration and the Award is limited to a declaration of the parties' rights regarding dissolution. Thus, Defendant contends, the Chancellor erred by issuing a mandatory injunction that orders Defendant to dissolve, wind up, and liquidate CCASC.

For its part, Plaintiff insists that the Chancellor did not modify the Award; instead, the Chancellor entered an order enforcing both the Award and the Final Order that confirmed the Award.

The arbitration panel ruled that "the voluntary dissolution of [Plaintiff] mandates a dissolution of CCASC," and ordered that "the voluntary dissolution of [Plaintiff] will trigger the mandatory dissolution of [CCASC]." Then, based on the Chancellor's ruling that the Award was unambiguous, the Chancellor ordered Defendant

> to end business operations by CCASC and to cause the immediate liquidation and dissolution of CCASC, to file necessary instruments or documents required by law to effect the dissolution and liquidation of CCASC, to promptly wind up the affairs of CCASC including billing and collecting amounts owed to CCASC, and after paying or providing for the payment of all liabilities and obligations of CCASC, to distribute the assets of CCASC[.]

Defendant contends this ruling was in error because it constitutes an improper modification of the Award. In making this argument, Defendant relies on *J.B. Hunt Transport, Inc. v. BNSF Railway Co.*, 9 F.4th 663 (8th Cir. 2021), in which the U. S. Eighth Circuit upheld a district court's decision not to enforce an arbitration award. Ruling on a dispute over a revenue splitting formula, the arbitration panel "explicitly 'decline[d] to award damages or other penalty, order, etc.,'" instead opting to "clarify the parties' obligations" regarding the formula. *Id.* at 666. The appeals court reasoned that ordering specific performance based on the arbitration award was beyond the scope of the district court. "Granting a remedy that the Award did not grant would constitute modifying the Award," which was precluded by statute. *Id.* at 669.

Plaintiff insists that the facts here are distinguishable from *J.B. Hunt.* As Plaintiff notes, the Award at issue here directed affirmative relief by using compulsory language, stating that "the voluntary dissolution of [Plaintiff] **mandates** a dissolution of CCASC," and ordering that "the voluntary dissolution of [Plaintiff] will trigger the **mandatory** dissolution of [CCASC]." (Emphasis added). This wording is far different than that of *Hunt*, wherein the panel simply declared the proper interpretation of a financial formula and, significantly, stated in the arbitration award that no affirmative relief would be granted.

Accordingly, the Chancellor did not modify the Award.

### III. JUDICIAL DISSOLUTION AND RECEIVERSHIP

Defendant contends that Plaintiff and the Chancellor ignored dispositive provisions in the Operating Agreement that preclude the relief sought in Plaintiff's petition. Defendant relies on the Agreement's language expressly waiving the right to petition a court to dissolve or appoint a receiver over the LLC. As stated in § 13.4 of the Operating Agreement, the members of CCASC agreed "that irreparable damage would be done to the goodwill and reputation of the LLC if any member should bring an action in a court to dissolve the LLC." Further, the members agreed that the provisions available under the Operating Agreement and the Act are "fair and just" in the event of liquidation or a member wanting to sell its interest in the LLC. Finally, the section states that members "waive[] and renounce[] [the] right to such a court decree of dissolution or to seek the appointment of a liquidator or receiver of the LLC." Thus, Defendant contends, the Chancellor erred by ordering the dissolution of CCASC.

Plaintiff argues, *inter alia*, that the mandates of the Award are consistent with the Operating Agreement, which states in § 13.2 that "the LLC shall be dissolved and its affairs wound up" upon the dissolution of any member of the LLC. Thus, there was no need to request judicial dissolution, but rather enforcement of the Award. Additionally, Plaintiff contends that it did not agree to "forego all judicial remedies where, as here, another Member willfully refuses to comply with the Operating Agreement and with court orders." Thus, Plaintiff insists that its actions were not out of compliance with the Operating Agreement.

Contrary to Defendant's argument, rather than seeking judicial dissolution from the outset, Plaintiff's initial action was to initiate an arbitration proceeding to determine whether its dissolution mandated the dissolution of CCASC. This course of action complied with § 14.11 of the Operating Agreement, which states that "[a]ll disputes relative to interpretation of the provisions of this agreement shall be resolved by binding arbitration." The arbitration panel ruled that Plaintiff's dissolution mandated that CCASC dissolve. But once Plaintiff dissolved, Defendant refused to dissolve CCASC. Instead, Defendant continued the business of CCASC. It was not until Defendant refused to comply

with the Award and the Final Order that Plaintiff sought the assistance of the court to enforce the Award and the 2021 Final Order.

Defendant insists that Plaintiff's only remedy is to return to arbitration to seek an award that "expressly" orders the dissolution of CCASC. We disagree. Because, as the Chancellor correctly found, the Award is unambiguous, there is no need to remand the dispute to the arbitration panel. Indeed, *J.B. Hunt v. BNSF Railway*, cited by Defendant, acknowledged that "when possible, . . . a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." 9 F.4th at 670 (quoting *Matrix Serv., Inc. v. Int'l Union of Operating Eng'rs., Loc. 150*, No. 05 CV 3618, 2005 WL 8179249, at *1 (N.D. Ill. Nov. 22, 2005)). And as our Supreme Court has explained, arbitration merits a "high degree of conclusiveness" because the parties have "substituted a tribunal of their own choosing for the one provided and established by law." *Arnold*, 914 S.W.2d at 452. Requiring further inquiry by the arbitrators about the meaning or intent of their unambiguous Award runs the risk of arbitration becoming "merely a step in the settlement of the dispute, instead of its final determination." *Id*.

While § 13.4 of the Operating Agreement prohibits members from seeking judicial dissolution, § 14.11 requires the parties to submit to the decisions of arbitrators as final and binding. And without the ability to seek judicial enforcement when a party refuses to comply with the unambiguous mandate of an award, the prevailing party would be left without a mechanism to realize the very remedy mandated by the arbitration.

Furthermore, the Tennessee Uniform Arbitration Act ("TUAA") expressly authorizes court involvement in the enforcement of arbitration awards. Specifically, Tennessee Code Annotated § 29-5-326(a) authorizes the confirmation of a final arbitration award by court decree. And, significantly, confirmed arbitration awards are to be entered as judgments and "enforced as other judgments in a civil action." Tenn. Code Ann. § 29-5-326(a). Moreover, Plaintiff is not required to show irreparable harm to enforce the Final Order as Defendant contends.[7]

That is what was done in this case when the Award was confirmed by the Chancery Court's 2021 Final Order. Likewise, in 2024, the Chancery Court utilized its "inherent powers" to enforce its decree confirming the Award at issue.[8]

---

[7] This is in reference to Defendant's fourth issue, which reads: "Whether the chancellor erred by ordering [Defendant] to dissolve the limited liability company and denying [Defendant's] Motion to Dismiss despite Plaintiff's failure to plead or prove irreparable harm." The answer to this question is no, as evidenced by the TUAA's language covering enforcement of judgments. *See* Tenn. Code Ann. § 29-5-326(a).

[8] "The phrase 'inherent powers' is used to refer to powers included within the scope of a court's jurisdiction which a court possesses irrespective of specific grant by constitution or legislation." *Anderson*

Thus, the commencement of this action to enforce the Award and the Final Order did not violate the Operating Agreement.

## IV. CONTEMPT

Defendant further disputes Plaintiff's claim that it should be held in contempt for its failure to follow the mandates of the Award. As stated by Defendant in its brief before this court, "Although the Chancellor did not hold [Defendant] in civil contempt, she erred in failing to dismiss Plaintiff's claim for civil contempt[.]"

We find this issue is not properly before this court because the Chancellor implicitly dismissed the pending contempt claim. The 2024 final award reads: "Should [Defendant] fail to begin to wind up the business operation of CCASC, [Plaintiff] may file a Motion for Contempt along with a Notice of Hearing." Thus, the Chancellor dismissed the Motion for Contempt. Because the Chancellor dismissed Plaintiff's Motion for Contempt, this issue is moot.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. The costs of appeal are assessed against Defendant, AmSurg Holdings, Inc.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

*Cnty. Q. Ct. v. Judges of 28th Jud. Cir.*, 579 S.W.2d 875, 878 (Tenn. Ct. App. 1978) (citing 20 Am. Jur. 2d Courts § 78 (1964)).